GEORGE P. KANE, Sheriff, *vs.* MARTHA J. ROBERTS and others, Executors of HENRY T. ROBERTS.

*Voluntary deed valid as against Subsequent creditors of Grantor.*

A deed fraudulent and void as against the grantor's antecedent creditors, is valid, if recorded, as against subsequent creditors, when there is nothing in the deed itself, and no evidence to show any intent or design to defraud such creditors.

APPEAL from the Court of Common Pleas.

The case is sufficiently stated in the opinion of the Court.

The cause was argued before STEWART, BOWIE, GRASON and MILLER, J.

*Thomas H. Bevan* and *Isidor Rayner*, for the appellant.

The Statute of 13th Elizabeth, chap. 5, declares all gifts, conveyances and alienations, of real and personal property, whereby creditors or others may be delayed or defrauded, void as against them. It is now an indisputable principle of law, sanctioned by the highest Courts of this country and England, upon the construction of the Statute of 13th Elizabeth, that a conveyance made by a grantor, in insolvent circumstances, for the purpose of hindering or delaying his subsisting creditors from seizing the property conveyed, is *void* and fraudulent against all those who might become creditors thereafter. That being fraudulent in fact against his subsisting creditors, it is *ipso facto* void and fraudulent as to every one who may be injured, delayed or defrauded thereby. The record here shows that the appellant offered to prove that this bill of

sale contained not only one, but every element of fraud that can be conceived of; *the want of consideration, the continuance of the property conveyed in the possession of the grantor, his insolvency at the time of the conveyance, and the admitted and unequivocal intentions thereby to defraud creditors at large.* Moore, *et al. vs.* Blondheim, *et al.*, 19 Md., 172; *Horn vs.* The Volcano Water Co., 13 Cal., 62; Reade *vs.* Livingston, 3 Johns. Ch. R., 481; Ridgeway *vs.* Underwood, 4 Wash. Ct. Ct. R., 129; Thomson *vs.* Dougherty, 12 S. & R., 448; Ingram *vs.* Phillips, 5 Strobhart, 206; Iley *vs.* Niswanger, 1 McCord Ch. R., 518; Clark *vs.* French, 23 Maine, 221; Smith's Leading Cas., 1–40; Parkman *vs.* Welch, 19 Pick, 231; Smith *vs.* Lowell, 6 New Hamp., 67; Hutchinson *vs.* Kelly, 1 Robinson, (Va.) 123; Bump on Fraudulent Con., 326, 327, *et seq.;* Benjamin on Sales, 364; 1 Story's Eq. Jur., sec. 361.

A distinction has been drawn in some of these cases between a conveyance merely fraudulent in law, in other words, a voluntary conveyance made by a debtor in insolvent circumstances without the actual intention to defraud his creditors, and *one fraudulent in fact,* that is, one made for the avowed purpose of defrauding creditors; and while in some of these cases it seems to have been held that subsequent creditors cannot impeach a conveyance, merely because it is voluntary and fraudulent in law, it has in all of them been uniformly held that if *fraudulent in fact,* it is void against subsequent creditors. In this case there cannot be the least doubt but that the evidence which was excluded, tended to prove that this conveyance was in every sense of the word, *fraudulent in fact,* and that therefore it should have been admitted.

*John C. King,* for the appellee.

The question in this case has no reference whatever to the rights of antecedent creditors, and the defendant cannot seize the goods conveyed by the deed by virtue of their

claims, or avail himself of their merits. It is in behalf of a subsequent creditor that the deed is assailed; against such it is perfectly good unless made with a direct reference to defraud them.

This fraud is not even alleged in the testimony offered by the defendant. The debt of Sharrer & Son was not only made fifteen years subsequent to the bill of sale, but Matthias Roberts alleges only that he made the deed to hinder and delay his *antecedent* creditors, and does not intimate anywhere that it was done with a view to contract future obligations; indeed to have asserted that he made it with a view to contract a debt made so long after the execution of the instrument, would have been incredible; when moreover the debt appears to have been incurred for the funeral expenses of his wife, the supposed fraud ceases even to be possible. *Williams, et al. vs. Banks, et al.,* 11 *Md.,* 250; *Moore vs. Blondheim,* 19 *Md.,* 172; *Cooke's Lessee vs. Kell,* 13 *Md.,* 469.

GRASON, J., delivered the opinion of the Court.

This suit was instituted by the appellees against the appellant for damages for the taking a piano, alleged to belong to the appellees. The piano was seized by the appellant as sheriff of Baltimore city, under a writ of *fieri facias* issued upon a judgment in the Court of Common Pleas of Baltimore city, which had been obtained by F. A. Sharrer & Son against Matthias Roberts. The proceedings show that the debt, for which the judgment was recovered, was incurred in 1872 by Matthias Roberts for a coffin and funeral expenses. It further appears that on the 9th November, 1858, Matthias Roberts and wife executed a bill of sale to Henry T. Roberts which was duly recorded, by which they conveyed to him certain personal property then contained in the dwelling house known and designated as No. 576 West Fayette Street, Baltimore, and among which was the piano, for the taking of which this

suit was brought. The consideration named in the bill of sale was fifteen hundred dollars. At the trial of the case the appellant offered to prove by Matthias Roberts, that he was insolvent at the time the bill of sale was executed, and that his creditors were clamorous for the payment of their debts ; that he explained his financial embarrassment to his brother, the said Henry T. Roberts, and asked his advice, and was advised by him to convey to him all his furniture and effects for the purpose of hindering and preventing his, Matthias' creditors from seizing the same, and that said bill of sale was made in pursuance of that advice, but that the money consideration was not paid, and that he was not indebted to his brother in the amount named in the bill of sale, and that his brother never claimed the property conveyed, but that it remained in his possession. He further offered to prove that the debt to Sharrer & Son was contracted without any knowledge on their part of the bill of sale, or the circumstances under which it was executed. This evidence was objected to by the appellees as inadmissible, the objection was sustained by the Court below and the appellant excepted, and the only question presented upon this appeal is whether a deed, that is fraudulent and void against the grantor's subsisting creditors, is also void against subsequent creditors when there is nothing in the deed itself, and no evidence offered tending to prove that any fraud was intended against the latter. It was contended by the counsel for the appellant, that, while a voluntary deed which is merely fraudulent in law, can be impeached by subsisting creditors only, a deed that is fraudulent in fact is void as against those who may become creditors after the execution of the fraudulent conveyance. While some of the authorities referred to sustain this proposition, we cannot hold them to be law in this State in view of the decisions of this Court in the cases of *Williams vs. Banks,* 11 *Md.,* 250 ; *Cooke vs. Kell,* 13 *Md.,* 469 ; *Moore vs. Blondheim,* 19 *Md.,* 175. These

cases hold that a voluntary deed, which is fraudulent in law, is void as against pre-existing creditors, and also that a voluntary deed, which is made with the design to defraud subsequent creditors, may be impeached by those so defrauded. But they also hold that where a voluntary deed is made without design to defraud subsequent creditors and is recorded, it is valid against all subsequent creditors, because they deal with the party with knowledge, either actual or constructive, of the existence of the conveyance. In this case there is no proof whatever tending to show that the bill of sale to H. T. Roberts was executed with an intent or design to defraud subsequent creditors, and the facts and circumstances clearly show that there could have been no such intent as to Sharrer & Son, because the bill of sale was executed in 1858, and the debt to them was not incurred until fifteen years afterwards, and was for a coffin and funeral expenses of some person whose death it was impossible for him to know would occur before his own. So far as the record shows, Sharrer & Son are the only creditors of Matthias Roberts who have become such since the date of the bill of sale, and it does not appear that any of those who were his creditors previously to its execution have ever complained or made any effort to impeach it, and, for aught that appears in this case, they may have received what was due them long before the debt to Sharrer & Son was contracted. The recording of the bill of sale was notice to all the world, and Sharrer & Son therefore dealt with Matthias Roberts with knowledge of its existence. In *Williams vs. Banks,* 11 *Md.,* this Court said, "we cannot comprehend how a person, who, at the time of becoming a creditor, is aware of the existence of the deed, can, in any just sense, be considered as disturbed, hindered, delayed, or defrauded by it. It seems to us to be a contradiction in terms to say, that a person is defrauded by an instrument, when he deals with a perfect knowledge of its existence and its effect."

The bill of sale in this case could not be impeached as fraudulent by Sharrer & Son, and the evidence offered was properly rejected.

*Judgment affirmed.*