# CHARLESTON.

## CONAWAY'S ADM'RS *v.* STEALEY *et al.*

Submitted September 14, 1897—Decided December 1, 1897.

1. DEED OF TRUST—*Parol Agreement—Sales.*

A deed of trust, duly recorded, conveying a stock of goods to secure the purchase money thereof, is valid as to subsequent creditors of the purchasers, even though there is a parol arrangement by which such purchasers are to hold possession of, sell, and replenish such stock of goods, and, after paying necessary expenses, apply the proceeds to the extinguishment of the trust lien. (p. 170.)

2. PARTNERSHIP—*Partnership Assets—Debts.*

Partnership assets must be first applied to the extinguishment of partnership debts, and a partner has no leviable interest therein, so far as his individual debts are concerned, until the partnership debts are fully satisfied. (p. 171).

3. PARTNERSHIP—*Sales to Partner—Creditors.*

A sale to a partner of the partnership effects in consideration of payment of the partnership indebtedness is on consideration not deemed valuable in law, and is invalid to give the purchasing partner any separate leviable interest therein to the injury or detriment of the partnership creditors. (p. 172).

4. PARTNERSHIP—*Suretyship—Partnership Creditors.*

A person who becomes surety for a partnership debt, in so far as such suretyship is concerned is entitled to be treated as a partnership creditor. (p. 173).

Appeal from Circuit Court, Pleasants County.

Action by C. I. Conaway's administrators against James Stealey and others to subject certain property to payment of partnership debts. From decrees for plaintiffs, the defendant Ella G. Stealey appeals.

*Reversed.*

Vandervort & J. F. Barron, for appellant.

J. G. McCluer and Thos. I. Stealey, for appellees.

Dent, Judge:

Ella G. Stealey appeals from decrees of the Circuit Court of Pleasants county in the chancery cause of C. I. Conaway's administrators against James Stealey *et al.* The facts are as follows:

On the 2nd day of November, 1887, Joseph Porter, a merchant, sold his stock of merchandise situated in his storeroom in the town of St. Marys, in said county, to James Stealey and H. M. Bookman, afterwards carrying on said business as Stealey & Bookman, taking as part consideration therefor their two several promissory notes bearing date the day of sale, each for one thousand three hundred and forty-two dollars and eighty-six cents, with interest, payable, respectively, on the 1st day of November, 1889, and the 1st day of November, 1890, and signed by the members of the firm and their respective wives, Ella G. Stealey and R. P. Bookman, as their sureties. To secure these notes, a lien was retained on the stock of merchandise by a deed of trust duly executed and recorded strictly in accordance with the statutory laws of the State. This deed is as follows: "This deed, made this 2d day of November, 1887, by and between James Stealey and H. M. Bookman, of Pleasants county, and State of West Virginia, of the first part, and J. C. Noland, trustee, of the county and state aforesaid, of the second part, witnesseth that for and in consideration of the sum of one dollar cash in hand paid, the receipt whereof is hereby acknowledged, and for the further stipulation and agreements which is hereinafter set forth, the party of the first part doth hereby grant, sell, and convey to the party of the second part their entire stock of general merchandise situated in the storehouse of Joseph Porter, in the town of St. Marys, and on the corner of George and Second streets, Pleasants county, West Virginia; to have and to hold to himself, the said J. C. Noland, trustee, party of the second part, his heirs and assigns, in trust to secure Joseph Porter in the payment of five several promissory notes,

executed by James Stealey and Ella Stealey, his wife, and H. M. Bookman and R. P. Bookman, his wife, and notes described as follows:    The first note calling for two hundred dollars, due and payable Feb. 1st, 1888; the second note calling for four hundred dollars, due and payable May 1st, 1888; the third note calling for five hundred dollars, due and payable Nov. 1st, 1888; the fourth note, calling for thirteen hundred and forty-two dollars and eighty-six cents, due and payable November 1st, 1889; the fifth note calling for thirteen hundred and forty-two dollars and eighty-six cents, due and payable Nov. 1st, 1890,—and all said five promissory notes to bear interest from date:  Now, if the said James Stealey and Ella G. Stealey, his wife, and H. M. Bookman and R. P. Bookman, his wife, shall well and truly pay off and discharge said indebtedness according to the tenor of the five several promissory notes, then this deed to be void, and of no effect, but if default be made in the payment thereof, of any one of the above described promissory notes, according to the tenor thereof, then it shall be the duty of said trustee to sell for cash the property hereby conveyed, and the proceeds thereof to go towards paying off the above-described promissory notes, and the said trustee shall be governed by the statutes made and provided for the government of trust deeds, by the laws now in force in the state of West Virginia.    Witness the following signatures and seals the day and year first above written.    James Stealey.   [Seal.]   H. M. Bookman. [Seal.]"    Also, as further and additional security, H. M. Bookman and R. P. Bookman, his wife, executed a deed of trust on certain real estate belonging to the husband, and certain real estate, the separate property of the wife; and James Stealey and Ella G. Stealey, his wife, executed a deed of trust on certain real estate, the separate property of Ella G. Stealey.

The firm took possession of the goods, and carried on the business of merchandising, selling and replenishing until the 11th day of January, 1889, when the following contract of dissolution was entered into—Bookman to retire and Stealey to continue the business:    "This contract and sale agreement made and entered into this 11th day of January, 1889, by and between H. M. Bookman, of the one

part, and James Stealey, of the other part, witnesseth that for and in consideration of the agreements, stipulations, and conditions hereinafter mentioned, H. M. Bookman, partner, and one of the firm of Stealey and Bookman, has this day sold and conveyed to his late partner James Stealey, all of his right, title, and interest of whatsoever kind in and to the store known as the 'Joseph Porter Store' or 'Stealey and Bookman Store,' to wit, all of my right and interest in all of the goods in said store at this time, or all that may hereafter come in in the firm name of Stealey and Bookman, all my right, title, and interest in all of the staves, railroad cross-ties, and lumber of any kind and all kind whatsoever that are now under the management, ownership, and control of the said firm of Stealey and Bookman, and all my right, title, and interest in and to all of the accounts, notes, or other things due and payable to the said store of Stealey and Bookman (or that may hereafter come due), and all of my right, title and interest in and to all of the store furniture and fixtures of every and all kinds and descriptions. Yet upon the following conditions: In consideration of the sum of four hundred dollars, to be paid as follows: The sum of two hundred dollars on or before Feb. 20, 1889, and the sum of two hundred dollars on or before 11th day of July, 1889, all of which is evidenced by James Stealey's notes of even date herewith; and that said Bookman is to have free of charge a small pile of lumber up at the tie yard and a small lot on Stealey's lot; and upon the condition that James Stealey do right away, or as soon as may be possible, give to Joseph Porter such other and additional security that may be accepted and approved by the said Porter, and to have said Porter to release said Bookman from all liability of every kind, and have said Porter to release the trust deeds that he now holds against said Hugh M. Bookman and Rebecca P. Bookman, his wife's property; also said Bookman is relieved and released from the payment of his family and cooper-shop account; and the further and last consideration that said James Stealey assumes, agrees, and binds himself to pay off and discharge all bills, notes, or other indebtedness of any and all kinds that are now due, or that may hereafter come due, of the late firm of Stealey and Bookman. In witness

whereof, we hereto subscribe our names and seals this 11th day of January, 1889.  H. M. Bookman.  [Seal.]  James Stealey.  [Seal.]"

On the 12th of March, 1889, Stealey paid seven hundred dollars on the Porter note, and Porter released the separate property of R. P. Bookman, and to secure H. M. Bookman for his liability on said notes Stealey executed to Bookman a note for eight hundred and three dollars and ninety-three cents, with Ella G. Stealey as surety, the collection of which was conditional on failure of Stealey to pay the balance due Porter.   Stealey continued the business in his own name until June, 1889, when he absconded.   His individual creditors, C. E. Sarber, Robert H. Browse, and Charles I. Conaway, now deceased, and represented by his administrators, levied on the stock of goods by virtue of attachments and executions.   Other individual creditors also levied attachments on the same property.   The creditors were all convened before the court, and on a final hearing of the cause, by the several decrees complained of, the court adjudged the deed of trust given on the stock of goods to secure the purchase money invalid, held the property covered thereby not subject to the partnership debts of the firm of Stealey & Bookman, and distributed the same among the individual creditors of James Stealey according to their attachments and executions; and decreed the sale of the property of H. M. Bookman and Ella G. Stealey to pay the debt of Joseph Porter.   Ella G. Stealey is the sole appellant, and she here insists that the circuit court erred in holding the purchase-money trust deed invalid, and that the stock of goods was not first liable to the payment of the firm debts to the exclusion of the individual debts of James Stealey, and in not thus applying them to the relief of her property.   If she is right as to these propositions, there being sufficient firm assets, including the individual property of H. M. Bookman, to pay off and satisfy the firm indebtedness, amounting to about three thousand three hundred dollars, all other questions raised in the case become unimportant.   A determination of these points in her favor would render further litigation unnecessary.

The vital question, then, is as to whether the purchase-

money deed of trust is invalid. Appellees' counsel assume for granted such to be the case, while appellant's counsel, half convinced, insist the contrary to be true. In many apparently similar cases such deeds have been held void by this Court. They are as follows: *Landeman* v. *Wilson*, 29 W. Va., 702, (2 S. E. 203); *Shattuck* v. *Knight*, 25 W. Va., 590; *Klee* v. *Keitzenberger*, 23 W. Va., 749; *Livesay's Ex'r* v. *Beard*, 22 W. Va., 585; *Chaflin* v. *Foley*, *Id.* 434; *Gardner* v. *Johnston*, 9 W. Va., 403; *Kuhn* v. *Mack*, 4 W. Va., 186; *Marks* v. *Hill*, 15 Grat. 400; *Quarles* v. *Kerr*, 14 Grat. 48; *Addington* v. *Etheridge*, 12 Grat. 436; *Spence* v. *Bagell*, 6 Grat. 444; *Sheppards* v. *Turpin*, 3 Grat. 373; *Lang* v. *Lee*, 3 Rand. (Va.) 411. In each of these cases the avoided deed was executed by an insolvent debtor, who either expressly, or by necessary implication, fairly deduced from the language used, retained the power of disposal, by which he could personally get the benefit of the property conveyed, and entirely defeat the pretended object of the deed. Such deeds were held to be invalid as to existing unsecured creditors. In the present case, however, we have a firm just starting in business on borrowed capital. It has no existing indebtedness to be the subject of fraud. Joseph Porter agrees to sell them a complete stock of merchandise on credit, provided he is permitted to retain a lien on such stock of goods to secure the unpaid purchase-money until the same is paid off and discharged. This trust deed is executed for this purpose, and there is nothing on the face of it to indicate fraud, and the trustee, in so far as its provisions are concerned, was entitled to take immediate possession. There was undoubtedly a parol understanding deducible from the transaction that the grantors were to take possession of the stock subject to the trust deed and sell and replenish the same, and pay the deed of trust out of the profits arising therefrom and from other sources; and on failure to do so within a stipulated time the trustee was to dispose of the stock, and apply the proceeds to the extinguishment of the lien. Is there any possibility of fraud in such case? There were no antecedent creditors; and all subsequent creditors, by the recordation of the trust, had due notice thereof before dealing with the firm or members thereof, and they dealt

with open eyes. They had no property until the trust gave it to them conditionally. There was no good reason why the trust should not cover subsequent purchases for cash, especially if realized from the proceeds of the trust property. And if others, with full legal notice, were willing to credit the firm with purchases, to be intermingled inseparably with the trust property, it is their own loss; and others who did not do so have no right to complain with regard thereto. But it is insisted that the firm, being allowed the privilege by parol to sell, could defeat the purpose of the trust, and render the same abortive, and thus the use of their property is secured to the firm to the prejudice of their creditors. The firm had no property until the trust vested it in them conditionally. The trust furnishes their capital. Without it, they would have had none. Therefore the property is virtually a mere loan to them, and their subsequent creditors have no rights with regard thereto, and if they misuse or embezzle the property without returning it either in value or kind, it is solely the trust creditor and not others, who is injured thereby, as nothing is taken away from them. But the trust creditor, under the terms of the trust, whenever the firm misappropriate or show a disposition to destroy the trust subject, has the right to immediate seizure and restoration of the property; at least, to take charge of it through the trustee. It is argued that he has other security for his debt on the real estate of R. P. Bookman and Ella G. Stealey. They are mere sureties for the debt, and they have a right to the benefit of the trust on the firm property; and, if it was in any manner released by the principal without their knowledge and consent, they would be relieved from their suretyship. Not being fraudulent in its inception, it could not be made so by any after-conduct of the grantors. By virtue of the trust deed and the purchase of the firm thereunder, the firm became virtually the agents of the trust creditor and the trustee with regard to their dealings with the stock, which agency could be determined at any time by impairment on their part of the security of such deed. Such agencies have been upheld. *Harden* v. *Wagner*, 22 W. Va., 357; *Gordon* v. *Cannon*, 18 Grat. 387; *Marks* v. *Hill*, 15 Grat. 400. Not only

that, but subsequent creditors had the right to levy on the equity of redemption, and force an execution of the trust by sale at any time; or they might pay off the lien, and take the property through the intervention of a court of equity. The effect of the lien might be to destroy the credit of the firm, and compel them to buy for cash, but of this subsequent creditors would have no right to complain. Under section 5, chapter 75, Code 1891, a deed of trust duly recorded is valid as to subsequent creditors. In the case of *Etheridge* v. *Sperry*, 139 U. S. 266, (11 Sup. Ct. 565), the Supreme Court of the United States held that under the laws of the state of Iowa "a mortgage on a stock of goods in a store in that state, otherwise valid, is not invalidated by reason of a parol understanding at the time of its execution that the mortgagor may retain possession, and sell the goods and apply the proceeds to his own support, and to keep up the stock, applying only the surplus to the payment of the mortgage debt." This was not a debt for purchase money, and in this State the trust would probably have been held invalid as to pre-existing creditors. Mr. Justice Brewer, in commenting on that case, says: "Indeed, if this were an open question, we could not be blind to the fact that the tendency of this commercial age is towards increased facilities in the transfer of property, and to uphold such transfers so far as they are made in good faith. And it is at least worthy of thought whether the rulings made by the supreme court of Iowa do not tend to make chattel mortgages more valuable for commercial purposes, without endangering the rights of unsecured creditors. The law now generally requires a record of all such instruments, and that, like the recording of a real-estate mortgage, gives notice to all parties interested of the fact and extent of incumbrances. Why should a transaction like this be condemned if made in good faith to secure an honest debt? The owner of a stock of goods may make an absolute sale of them to his creditor in payment of a debt. If an absolute, why not a conditional, sale, with such conditions as he and his creditor may agree upon? As between the parties, no court would question this right, or refuse to enforce the conditions. The interest of the general public are not prejudiced by

any such transaction between debtor and creditor. Indeed, they are rather promoted by an arrangement under which the mortgagor can continue in business, for in ninety-nine cases out of one hundred the taking of possession by a creditor results in closing the business, and turning the debtor out of employment. The only parties who can claim to be injuriously affected are unsecured creditors. But they are notified by the record of the exact relations between the mortgagor and the mortgagee; and surely subsequent creditors have no right to complain if they deal with the mortgagor with full knowledge of such relations. Existing creditors may, of course, challenge the good faith of the transaction; but, if they cannot disturb an absolute sale when made in good faith, why should they be permitted to challenge a conditional sale if made in like good faith? The fact that fraudulent relations are possible is hardly a sufficient reason for denouncing transactions which are not fraudulent." In the case of *Kreth* v. *Rogers*, 101 N. C. 263, (7 S. E. 782), the supreme court of North Carolina sustained a similar deed as valid. Judge Merrimon, delivering the opinion of the court, said: "Such a transaction is legitimate. The deed was not intended to secure debts antecedent to it, in view of insolvency and impending failure in business of the mortgagor ; on the contrary, it contemplated that the mortgagor should go forward actively in a promising enterprise, and from the just fruits of it in the course of a reasonable period pay the purchase money." It was also held that after-acquired property was covered by the trust, unless it could be separated and identified by those claiming it.

There is another reason why this deed of trust is not invalid as to those attacking it. It was given on partnership property, by the members of the firm, to secure the purchase money due thereon, being the primary indebtedness of the partnership, and individual creditors of James Stealey alone assail it. Social assets are primarily liable for social debts, and a partnership, in securing such debts by conveyances of such assets, could not be guilty of fraud against the individual creditors of members of the firm; for it is a legal duty for them to do so. And individual

creditors cannot subject the social assets to the payment of their debts until the partnership liabilities have been fully discharged. Porter's debt was, therefore, a valid partnership lien on the social assets, and, having been reduced to writing, duly recorded, no act of either or both the partners could afterwards defeat it as long as the social assets could be traced. The dissolution of the partnership could not destroy this lien, nor was it intended to do so, but it was strictly preservative thereof. Stealey took the partnership effects of Stealey & Bookman, with Joseph Porter's lien thereon, purchasing subject thereto; and Stealey's individual creditors, with or without notice of the dissolution, can have no greater rights as to such property than Stealey himself possessed. A partnership cannot render itself insolvent by conveying its assets to one of the partners, and permitting them to be seized by the individual creditors of such partner to the exclusion of the partnership creditors, for such a conveyance would be fraudulent and void as to them. *Darby* v. *Gilligan*, 33 W. Va., 246, (10 S. E. 400). In that case it is said that: "If the firm is insolvent, or on the eve of insolvency, and both the partners are insolvent, a purchase by one partner of the interest of the other in consideration of the former's assumption of all the debts of the firm, will be regarded as a purchase upon a consideration which is of no value whatever, and, no equivalent having been given, the transfer is, in effect, voluntary, and its only effect, if sustained, would be to hinder partnership creditors, and hence is deemed ineffectual to convert the joint property into separate property as against the firm creditors." *Baer* v. *Wilkinson*, 35 W. Va., 422, (14 S. E. 1). The partnership in the present case never was in a condition of solvency. From its inception it was doing business on borrowed capital; and if, at any time, sale had been enforced, its effects at such sale would not have been sufficient to pay the partnership indebtedness, without entirely exhausting also the individual property of the partners. The best evidence of this is the present winding up of the business, for it not only consumes the partnership property to pay the original capital of the firm, but it also exhausts the individual property of Bookman. This case is quite similar in all re-

spects to that of *Darby* v. *Gilligan*, except that in that case there was no purchase-money lien on the stock.   Gilligan promised to give his partner a larger consideration for his interest, and, instead of absconding after he had conducted the business about as long as Stealey, he gave, as he thought he had a right to do, a deed of trust on the property, to pay various preferred creditors.   This trust was held void as to the partnership creditors.   Stealey's creditors obtained lien by attachment and judgment, but they could gain no greater right in the property than Stealey had, which is entirely subject to the payment of the partnership liabilities.

In Story, Partn. § 97, the law is stated to be "that no separate creditor of any partner can acquire any right, title, or interest in the partnership stock, funds, or effects, by process or otherwise, merely in his character as such creditor, except for so much as belongs to that partner as his share or balance after all prior claims thereon are deducted and satisfied."   And in *Conroy* v. *Woods*, 13 Cal. 626, it is held that:   "Partners may make *bona fide* sale of their property at any time before the creditors acquire a lien; but a sale, directly or indirectly, to one of the partners, with a stipulation that he will pay the firm debts, is not such *bona fide* sale, so as to devest the property of its character as firm property primarily liable for firm debts." Nor have the creditors of James Stealey the right to force the debt of Joseph Porter onto the property of Mrs. Bookman and Mrs. Stealey, so as to permit them to take the partnership assets.   They are merely sureties for the debt, and by reason thereof creditors of the partnership, with the right to insist on the payment of the same out of the social assets to the relief of their separate properties.

There are other questions presented in this case which are eliminated by this conclusion.   The decrees complained of are reversed, and this cause is remanded to the circuit court, with directions to apply the partnership assets first, and the proceeds of the individual property of H. M. Bookman second, to the extinguishment of the trust lien of Joseph Porter, to the relief of the separate properties of H. P. Bookman and Ella G. Stealey, and to further proceed therein according to the rules and principles of equity.

ON REHEARING.

The arguments advanced by counsel are fully met by the opinion in this case, and it is wholly unnecessary to repeat the same. The deed of trust was executed more as a security for Mrs. Stealey and Mrs. Bookman, than to secure Bookman. And the fact that Nolan and Porter considered it fraudulent *per se* cannot make it so. The legal ignorance of lawyers or others cannot make law, render a valid instrument invalid, or divert social assets to the payment of individual debts. The ill-considered determinations of courts of last resort may sometimes have such an effect, but not outside opinion. For, if ignorance made law where now it does greatly abound, it would then be at a premium, and would fully substantiate the old adage that, "If ignorance is bliss, it is folly to be wise." Some of the parties thereto may have labored under the impression that a deed of trust for the purchase money of social assets would be invalid as to individual creditors of a firm ; yet this would not make it so, although sustained by the most learned of legal advisers, as they are liable to err. As heretofore directed, the decrees complained of will be reversed, and cause remanded.

*Reversed.*