# CHARLESTON.

## Lewis v. Crane.

Submitted March 1, 1901.   Decided November 23, 1901.

50   239
s57   543

Partnership—*Individual Indebtedness.*

>  A debtor of a partnership cannot apply his indebtedness to pay a debt due him from a member of the firm individually to the prejudice of firm creditors.   (p. 241).

Appeal from Circuit Court, Cabell County.

Bill by R. A. Lewis against R. H. Pritchard, C. Crane, and others.   Decree for defendants, and plaintiff appeals.

*Reversed.*

Vinson & Thompson, E. M. Watts, and T. J. Bryan, for appellant.

Campbell, Holt & Campbell, for appellees.

Brannon, President :

On the 22d of August, 1895, R. A. Lewis & Co., a partnership, and C. Crane & Co., a corporation, made a written agreement by which Lewis & Co. sold Crane & Co. all the oak and poplar which should be cut by Lewis & Co. and put on the banks of Big Ugly Creek in Lincoln County- and delivered at the mouth of Guyan river up to the first day of April, 1896. The contract says that "when delivered on the banks of said creek the said logs are to be branded with 'R. L.' brand, which is to be known as C. Crane & Company's brand, and it is expressly understood and agreed that upon said delivery, measurement and branding of said timber on the banks of said creek as aforesaid, the title thereto shall pass to and be in the said C. Crane & Company. The said C. Crane & Company agrees to pay unto the said R. A. Lewis & Company the price of seven cents per cube for said timber as measured and inspected on the banks of said creek as aforesaid. The said R. A. Lewis & Company further agree, for the price of three and one-half cents per cube, for said timber as measured, and inspected on the banks of said creek, to drift, raft and deliver in fleets at the mouth of said Guyan river. The said timber

shall be measured at the mouth of Guyan river by C. Crane & Company and proper deductions are to be made for any other logs taken with any apparent defects, and said R. A. Lewis & Company is to stand good for such deductions and for all loss of logs by sinking, by floods or otherwise, at the same price paid for same as heretofore set forth." Lewis & Co. had prior to this contract sold logs to Crane & Co. and furnished many under this contract. Lewis & Co. became largely involved in debt, and R. H. Pritchard, a member of the firm, became individually involved, as well perhaps as the firm of Pritchard & Brubaker, of which he was a member. R. A. Lewis, a member of the firm, brought a suit in the circuit court of Cabell County to wind up the partnership of R. A. Lewis & Co., settle the accounts between that firm and C. Crane & Co., and apply the firm assets to the payment of the firm debts. A receiver was appointed in the case to take charge of the property of Lewis & Co., including logs, and haul, drift and sell the same, and the receiver sold and delivered some to Crane & Co. The case was committed to a commissioner to report, among other things, the accounts between Crane & Co. and Lewis & Co., and he reported that nothing was owing from Crane & Co. to Lewis & Co. The court decreed that nothing was owing from Crane & Co. for timber sold to it under the said contract, as the same had been fully paid for. From this decree Lewis appealed.

Little need be said in the case as it involves no legal principles not well settled, and can be no precedent.

The commissioner's report, as itself virtually admits, is unsatisfactory, and we hold it in several respects erroneous.

In January, 1897, there were delivered by R. A. Lewis & Co. on the banks of Big Ugly creek nine thousand logs, which were measured, accepted and branded with "R. L.," which, by the contract, was to be regarded the brand of Crane & Co., and by the contract title in these logs thereupon vested in Crane & Co., and it became liable to account therefor to Lewis & Co. at seven cents per cubic foot. No account of these logs was taken in the commissioner's account between Lewis & Co. and Crane & Co.; no statement appears including these logs to the credit of Lewis & Co. and debit of Crane & Co. showing how much was debited to Crane & Co. on their account, and what payments were made thereon. The commissioner was

asked to report whether the seven cents per cube payable under the contract for timber delivered on the banks of Big Ugly creek had ever been paid, and he responded that it had not been paid "in strict conformity with the terms of the contract;" but that he was of opinion that "the advancements made from time to time by C. Crane & Co. was a substantial compliance with the terms of said contract." This is very indefinite and unsatisfactory. What advancements met the obligation for these logs imposed upon Crane & Co. by the contract? The report does not say. How could Lewis or the creditors of the firm tell how these assets liable for debts had been paid for? To whom and under what circumstances were the advancements made? The report does not let anyone know. There are no specifications. That is a mere lumping, or guessing, process by which the advancements are made to pay for those logs. When we seek in the evidence for satisfaction as to the advancements discharging this large sum we are the more justified in demanding specification as to the items of advancements to Lewis & Co. made on account of these logs, because we see that moneys must have been, more certainly may have been, charged to Lewis & Co. not chargeable to them in payments for these logs. We see that the firm of R. A. Lewis & Company was composed of R. A. Lewis and R. H. Pritchard, and was logging on Big Ugly creek; that Pritchard was individually logging on Island creek, Twelve Pole and Big Sandy; and that Pritchard was also a member of the firm of Pritchard & Brubaker, logging on Island creek, Twelve Pole and Sandy river, those businesses having no connection with the firm of Lewis & Company; that Lewis & Co., Pritchard individually and Pritchard & Brubaker were sellings logs to Crane & Co.; that Lewis & Co. kept no account between themselves and Crane & Co. but depended solely upon Crane & Co. to keep the accounts; that Crane & Co. kept no separate account between itself and Lewis & Co., but credited the logs it did credit, those received from Lewis & Co. before January, 1897, on Pritchard's individual account with Crane & Co.; that before the contract between Lewis & Co. and Crane & Co. Pritchard was indebted largely on individual account to Crane & Co.; that all payments to R. H. Pritchard or Pritchard & Brubaker, or R. A. Lewis & Co. were charged to Pritchard. So it appears that the only account to which we can ap-

peal is this account kept by Crane & Co., which jumbled the payments or advancements made on account of timber furnished by Prichard, Lewis & Co. and Pritchard & Brubaker, and also jumbled the advancements. How can we say that advancements were made which actually went to the benefit of Lewis & Co. to meet the indebtedness of Crane & Co. for these nine thousand logs? Indeed, as Pritchard owed Crane & Co. a large individual debt, we can say that it is this debt which was treated as an advancement by the commissioner and court as paying for the nine thousand logs, thus taking away from the creditors of the insolvent firm of Lewis & Company assets on which they had preferable claim, and applying them to pay the antecedent debt of an individual member contrary to the well settled rule laid down in *Conway* v. *Stealy,* 44 W. Va. 163, and *Hyre* v. *Lambert,* 37 W. Va. 26, "that partnership assets must be first applied to partnership debts, and a partner has no leviable interest therein, so far as his individual debts are concerned, until the partnership debts are fully satisfied." An account should be taken of those logs at the price of seven cents per cubic foot. Any advancements or payments made by Crane & Co. to the actual, separate use of the firm of Lewis & Co. should be credited to Crane & Co. The contract put upon Lewis & Co. the duty, not merely of putting logs on the banks of Big Ugly creek, but of rafting and drifting to the mouth of Guyan river. If Lewis & Co. failed to drift any of these logs, they could claim nothing for logs not drifted, neither the seven cents nor three and a half specified in the contract. But Crane & Co. took upon themselves the duty of rafting and drifting, owing to the inability of Lewis & Co. to do so, and for such as Crane & Co. drifted at their expense, that company would be liable to pay Lewis & Co. only the seven cents per cube, but nothing for drifting. For such as were drifted by the receiver and accepted by Crane & Co., Crane & Co. would be liable for both the seven and three and a half cents spoken of in the contract. It must be remarked that the contract gives Crane & Company the right of re-measurement at the mouth of Guyan for the correction of the preliminary measurement made for the purpose of the advancement of seven cents per cube on the banks of Big Ugly creek, and also gives right of sapping old logs, and deduction for defective logs.

Another error in the report is, that in the settlement between Lewis & Co. and Crane & Co. for timber delivered before January, 1897, a charge is made against Lewis & Co. to the credit of Crane & Co. of two thousand three hundred and thirty-two dollars and twenty-eight cents for supplies furnished to Lewis & Co. by Crane & Co. This was arrived at in a most unsatisfactory, arbitrary or chance way. A sum was fixed as paid by Crane & Co. for supplies consumed in the three logging works of Lewis & Co., Pritchard & Brubaker and Pritchard, and it was estimated by the clerk of Crane & Co. that the work of Lewis & Co. was about one-fifth of the total work of the three enterprises, and one-fifth of that sum was charged to Lewis & Co. without any evidence that Lewis & Co. received any of these supplies, or if any, to what extent. The clerk supposed, said he believed, that Lewis & Co. got some of these supplies. He did not know it. Most likely Lewis & Co. did get some of these supplies; but under a fixed rule of law, one who seeks to make a charge against another must make it definite and reasonably certain, else his effort fails for want of evidence, however just his claim to something may be. Payments claimed must reasonably appear to have been made for the benefit and to the use of Lewis & Co., not to the debt of an individual partner or for another firm.

As to an item of four hundred and ninety-one dollars money claimed to have been paid to Lewis & Co., it is not supported by evidence to show that it is chargeable to them. The commissioner, on the evidence as it then was, properly reported against it.

The evidence shows that Pritchard had a private arrangement with Crane & Co. to give Pritchard an extra one-half cent per cubic foot on all timber furnished by Lewis & Co., except hemlock. This contract enures to the benefit of the firm of Lewis & Co., and is chargeable in its favor against Crane & Co.

The decree of the 20th day of July, 1899, so far, and only so far, as it adjudges that the purchase price of all timber purchased by C. Crane & Company from R. A. Lewis & Company under the contract of August 22, 1895, as well as the timber delivered by the receiver to C. Crane & Co. under the bond given by the receiver, as well as all other timber claimed by

C. Crane & Co. under said contract, has been paid by C. Crane & Company is reversed, and the cause is remanded with directions to the circuit court to recommit to a commission the account between Lewis & Co. and Crane & Co. for settlement thereof, and for further proper proceedings.

*Reversed.*