# CHARLESTON.

The Horner-Gaylord Company *v.* Fawcett *et al.*

Submitted June 28, 1901.    Decided December 14, 1901.

1. Deed of Trust—*After Acquired Property.*
    A deed of trust executed in good faith to secure a *bona fide* debt on a stock of goods and extending to cover after-acquired property, duly recorded, is not fraudulent *per se* or *prima facie* fraudulent, as to subsequent creditors with notice, in equity. (p. 491).

2. Execution Creditor—*Remedy at Law.*
    A subsequent execution creditor has a plain adequate remedy at law as to such after-acquired property, but equity will afford him no relief, as such deed as to such property is void at law but will be sustained in equity.    (p. 492).

Appeal from Circuit Court, Harrison County.

Action by Horner-Gaylord Company against W. C. Fawcett and others.    Decree for defendants and plaintiff appeals.

*Affirmed.*

Lewis C. Lawson, for appellant.

Davis & Davis and H. W. Harmer, for appellees.

Dent, Judge:

The Horner-Gaylord Company appeals from a decree of the circuit court of Harison County in a suit in chancery wherein it was plaintiff, and W. C. Fawcett and others were defendants.

The first question presented by the record is the demurrer to the bill.

The bill alleges in substance that C. D. Robinson, the owner of a one-half interest in a bookstore at Clarksburg, Harrison County, on the 14th day of July, 1896, executed a deed of trust thereon to Sherman Denham, trustee, to secure Earnest B. Morris the payment of three certain obligations, bearing even date therewith, for the sum of three hundred and sixteen dollars and sixty-six and two-thirds cents, due and payable in six, twelve and eighteen months respectively, with interest from date; that on the 20th day of July, said Robinson executed to said Denham, trustee, another deed of trust on the other un-

divided half interest in said store purchased by him on that day of J. H. Horner to secure said Horner the payment of four certain obligations for three hundred dollars each, due and payable in six, twelve, sixteen and twenty months, with interest from date; that Earnest B. Morris assigned some of his said notes to S. O. Davis, and J. H. Horner assigned some of his said notes to Lynn S. Horner.   Some of said notes had upon them as surety F. E. Robinson and others I. N. Dean; that one of said notes was assigned to Flora E. Horner; that afterwards said Robinson sold said store to defendant W. C. Fawcett, or to Fawcett, Morris & Co.; that on the 3rd day of October, 1898, but not properly acknowledged until the 15th day of October, 1898, said Fawcett assigned said store to J. I. Alexander to secure his various creditors according to priority and his general unsecured creditors *pro rata,* plaintiff being included in the latter class, which assignment was not recorded until the 11th day of October, 1898; that said trustee sold the store and received therefor one thousand three hundred dollars, part of which he disbursed on the prior trust debts, and the remainder he still holds in his hands; that on the 3rd day of October, 1898, defendants Stuart Bros. & Co. obtained a judgment against C. W. Fawcett for the sum of fifty-five dollars and thirty-four cents with interest, and two dollars and twenty-five cents costs, had an execution issued thereon and levied on a part of the store goods alleged to belong to Fawcett, Morris & Co.; that on the 8th day of October, 1898, complainant obtained a judgment against Fawcett, Morris & Co., for one hundred and six dollars and eighty-seven cents and three dollars and five cents costs on which execution was issued and levied on said day at 8:30 P. M., on the property of Fawcett, Morris & Co., to-wit:   Books, stationery, show cases, fixtures, etc., being part of the property afterwards sold by said trustee Alexander, who took possession thereof on the 10th day of October, 1898; that after said executions were so levied a controversy arose as to whether the constables making the levy or the trustee should take possession of and sell such property and finally said trustee agreeing to pay such executions out of the proceeds of the sale of such property, he was permitted to take and sell the same.   But after such sale was made such trustee refused, at the instance of the beneficiaries under such prior deeds of trust to pay off said execution.   That Fawcett after his purchase put one thousand

dollars additional in such store and the greater part of the goods sold accumulated by purchase after the execution of the deeds of trust given thereon by C. D. Robinson. Plaintiff further claims that said executions having been issued and levied before the acknowledgment and recordation of the general assignment are entitled to priority over the same. That the beneficiaries under the two first deeds of trust are claiming the whole of the funds arising from the sale of such store, and which is insufficient in amount to fully satisfy the same, and have directed the trustee not to pay said executions, but to pay the same on their prior claims. That said prior deeds of trust are void and ineffectual as against said execution liens as to the property levied on aforesaid. Plaintiff prays that a sufficient amount of the funds in the hands of said Alexander be applied to the satisfaction of its execution; that the rights and interest of the parties hereto be ascertained and determined and the proceeds of said property be administered under the direction of the court, that the Denham, trustee, deeds of trust be set aside and declared null and void for uncertainty and other reasons apparent upon the same, and for general relief. Afterwards the plaintiff was permitted to amend his bill at the bar of the court by making parties thereto I. N. Dean, F. E. Robinson and Flora E. Horner, with proper allegations touching their interests.

The demurrer being again interposed to the bill as amended, the court overruled it.

The bill taken as a whole amounts to simply this, that the plaintiff having an execution lien by levy on certain property prior in right to all other liens except the lien of two deeds of trust void on their face, and which did not cover the property levied on, permitted such property to be sold by the trustee Alexander, on condition that he would pay off such executions out of the proceeds of such sale, and which after making the sale he refused to do, and therefore plaintiff instituted this suit to compel him to do so. Plaintiff sues to enforce the lien of an execution on personal property and not as a beneficiary secured under the assignment for an accounting by the trustee. No accounting was necessary. The suit is hostile to the trust, for it seeks priority over the same and independent thereof. If the prior deeds of trust are valid liens on the property, they take the whole fund as conceded in the bill, and this suit would be

wholly unnecessary, and unavailing. If, on the other hand, they are void on their face and do not cover the property they are just as void at law as in equity, and they afford no justification for the interposition of a court of equity. In short, if the allegations of the plaintiff's bill are true, it had a plain, adequate remedy in a court of law, and there was no necessity for the intervention of a court of equity. Admitting all its pretexts, it merely demands the money on its execution lien, which the trustee had in hand and refused to pay because of a void claim upon him by other parties and the only reason given for this appeal is because the money was not so applied. No person can file a bill of interpleader but the stakeholder, and he cannot do so if he is fully advised of the claims of both parties, so that he is able to determine to which of the parties he should pay the funds in his hands. 11 Ency. Plead. & Prac., 461. A person claiming in opposition to a trust or trustee cannot call upon the trustee to account. 27 Am. & En. En. Law, 278. The whole claim of the plaintiff as set out in his bill is in opposition to the trust and not under it. It seeks to deprive the trustee of the property by a prior lien, and has no right to demand an accounting from him merely to get such priority settled. The plaintiff did not file this bill because it had a lien on the equity of redemption under the two prior Denham trusts, for the property had already been sold and the proceeds were insufficient to satisfy such trusts, thus establishing the equity of redemption to be wholly valueless. Nor did it file it as a beneficiary under the Alexander trust, for its whole claim is in opposition thereto, and such beneficiary cannot maintain a bill to interfere with a trustee in the proper discharge of his duties as such. *Righter* v. *Riley,* 42 W. Va. 633; 2 En. Plead. & Prac. 885. Plaintiff's bill is peculiarly in its own interest, and not in behalf of the beneficiaries under the Alexander trust. Nor does it claim that the trustee has been derelict in administering such trust. It does claim that he has in his hands the proceeds of property not subject to such trust, but subject to its prior execution lien. 2 En. Plead. & Prac. 887. Its remedy at law for the real purpose and not fictitious pretexts of the bill is complete, full and adequate. 2 En. Plead. & Prac. 911; *Id.,* 679; Freeman on Executions, 3 Ed., s. 426, pp. 2296, 2297.

Admitting, however, that the plaintiff had the right ordinarily as a beneficiary under the Alexander trust and not in opposition

thereto to file its bill for an account of the funds thereunder, still it was demurrable. It shows on its face that the funds were insufficient to satisfy the two prior Denham deeds of trust, and that therefore as residuary beneficiaries there was no fund applicable to their debt in any event, and an appeal to equity was wholly useless and unnecessary. While the prior deeds might have been void *per se* as to existing creditors at the time of their execution they were good and valid as between the grantor and grantee, and all subsequent purchasers from the grantor having notice thereof. Fawcett had complete notice and acceded to the terms and became the paymaster thereof. The deeds were on record and were notice to all persons of the condition of the stock of goods, and that the title was in the trustee, Denham, with the equity of redemption in Fawcett, with the privilege of sale so long as he did not impair the security of the trust created thereby. Fawcett's trustee, Alexander, could acquire no greater right to the goods than Fawcett himself possessed, which was the mere equity of redemption. Fawcett having permitted his new purchases to take the place of his sales under the prior trust deeds, his trustee has no right to object thereto, as he receives the goods subject to all the prior legal burdens imposed thereon by his grantor. As is said in 3 Am. & En. En. Law (2. Ed.) 46 & 47, "An assignee takes only such rights in the assigned property as the assignor had at the time of the assignment, subject to all existing equities."

"The assignee takes subject to the liens and rights of the assignor's vendors." 2 En. Plead. & Prac. 879.

Beneficiaries take no greater rights under the assignment than their trustee. By virtue of the rights or lien acquired under the Alexander trust, they cannot attack the prior equities of the Denham trust beneficiaries as to the after-acquired property placed among the stock by Fawcett, for had he at any time refused to permit such after-acquired property to take the place of the property sold and become subject to the prior trusts, they would immediately have shut him up and closed out the store. So it must be presumed that he acceded to and thoroughly acquiesced in the conditions of the Denham trusts and his trustee, Alexander, and the beneficiaries under such trust are estopped from asserting anything to the contrary. It would be inequitable to permit them to do so. As creditors independent of such trust, they might have acquired liens by execution

or otherwise upon such after acquired property and forced the sale thereof and in this manner tested the validity of the clauses in the Denham trusts extending such clauses to cover such acquired property. It is plain from the allegations of the bill and the deeds that they were executed in good faith with no intention to defraud the creditors of Robinson or his vendee, Fawcett, but were merely intended to secure the purchase money for such store, and at the same time permit the possessor thereof to continue business so long as the trust debts were secured.

If the deeds of trust attacked had been voidable or void both at law and in equity, an entirely different case would have been presented from where the deeds are void at law but good in equity. By coming into equity the execution creditor loses his remedy at law and benefits the trust debtor who might otherwise have been compelled to file the bill himself to preserve his equitable rights, which he could not have asserted at law.

The real question which this record presents is as to whether the prior deeds of trust are void as to the after acquired property sought to be included under their provisions in a court of equity. At law they are. And the plaintiff, had it sought its remedy in a court of law would have found it adequate and complete, and the deeds of trust would have presented no bar to its recovery. 5 Am. & En. En. Law, (2 Ed.) 979; *Gregg v.Sandford,* 76 Am. Dec. 723, note; *Moody* v. *Wright,* 46 Am. Dec. 212, note.

But in refusing its plain legal remedy and coming into equity it must do equity. The deeds of trust bear evidence on their face that they were executed for the purpose of securing the purchase money for the stock of goods, being in the nature of a conditional sale and were intended to cover the after-acquired stock so as to keep them safe and secure. They were duly recorded. Plaintiff's debt was after contracted, and it had notice so far as the record shows, actual and constructive of these prior deeds of trust. They are not attacked for fraud, in fact, but simply because of the provision on their face as to the after acquired property of which plaintiff had notice. While the law would avoid them, equity sustains them as both prior in right and time to plaintiff's execution lien.

In 5 Am. & En. En. Law, (2d Ed.) 892, the rule in equity is stated to be that "while it is declared that a mortgage of future acquired property does not pass any immediate title to such

property yet as 'equity considers that done which ought to be done' such a mortgage creates an equitable lien which will attach to the subject matter immediately upon its coming into existence and create a valid title therein as against the mortgagor and third parties with notice without any further act on the mortgagee's part." The deeds of trust in controversy were but mortgages with power to sell upon the happening of certain events and as far as the bill shows there were no existing debts at the time they were taken and recorded. They are not governed by the numerous cases where existing creditors have attacked such deeds as fraudulent *per se.* From *Lang* v. *Lee,* 3 Rand. 411, to *Landeman* v. *Wilson,* 29 W. Va. 702, but are governed more nearly by the cases of *Conway* v. *Stealey,* 44 W. Va. 163; *Ethridge* v. *Sperry,* 139 U. S. 266; *Nutchell* v. *Winslow,* 2 Story, (U. S) 117; *Pemrock* v. *Poe,* 23 How. 117; *Galveston* v. *Cowdry,* 11 Wall. 459; *Dunham* v. *Railroad Co.,* 1 Wall. 254; *U. S.* v. *N. O. R. Co.,* 12 Wall. 362, and numerous State cases, reference to which will be found in the 5 Am. & En. En. Law, (2 Ed.) 982; *Gregg* v. *Sandford,* 76 Am. Dec. 731; *Moody* v. *Wright,* 46 Am. Dec. 717.

These deeds were not fraudulent in their inception, but are free from all fraudulent intent, their object being to secure the purchase money and at the same time furnish the grantor the means of satisfying it. The provisions as to the after acquired property are perfectly consistent with the object of their execution. Their recordation was notice to all persons dealing with the grantor and subsequent creditors dealt with open eyes and at any time by levying on the equity of redemption they could have compelled a sale of the stock. They were not made with the intent nor do they hinder and delay creditors in the collection of their debts.

Equity limits both the lien of a judgment on real estate and the lien of an execution on personal property to the actual interest of the debtor at the time such lien was acquired and will sell only such interest. A creditor who becomes such with full knowledge of the equities of others has no right to complain of such equities. The reasoning of Justice Brewer in the case of *Ethridge* v. *Sperry,* 139 U. S. 266, is unanswerable and conclusive on this question.

The demurrer to the bill should have been sustained and

the bill dismissed, but as this is an error of which the appellant has no right to complain the decree is affirmed.

ON PETITION FOR REHEARING.

In *Lang* v. *Lee,* 3 Rand. 433, Judge Cabell says: "As to the further point, that the deed under which Lang claims is fraudulent *per se,* it is one on which I feel some difficulty, and as it is certainly one of great importance and not necessary to be decided in this case, I purposely abstain from giving any opinion on it, that the question may be considered open for discussion, whenever it may again occur before a fuller court." The two other judges, Coalter and Carr, gave their opinions.

In *Sheppards* v. *Turpin,* 3 Grat. 404, Judge Allen declined to consider the question raised as to the deed of trust being fraudulent *per se,* because the case turned on the question of the statute of limitations. Judge Baldwin concurred in the opinion of Judge Daniel. In neither of these cases was the question of the fraudulent character of the deeds involved necessary to the decision thereof, and in both for this reason concurring judges declined to consider the same, and yet they have been uniformly followed by the courts of this State as settling this principle of law as to when a deed of trust or mortgage is fraudulent *per. se* conclusively. The principle thus admitted to be established is that when a grantor in a deed of trust who secures creditors reserves the possession and the power to sell the property to such extent as will permit him to defeat the ostensible purposes of such trust, the same is void *per se.* As to existing creditors not thereby secured independent of any extraneous evidence and being void as to existing creditors, if there be any such, would also be void as to subsequent creditors, for it matters not against whom fraud in fact is directed, if it be fraudulent as to one creditor it is fraudulent as to all. JUDGE GREEN in the case of *Shattuck* v.. *Knight,* 25 W. Va. 596, states the proposition as follows: "If the trustee by the terms of the deed of trust is not to take possession of the personal property until an indefinite future time and the provision whereby after-acquired property of the grantor is attempted to be conveyed to pay trust debts, and the inference from the character of the property conveyed and attempted to be conveyed is that the design of the grantor clearly shown by these provisions was when he executed the deed of trust, to hinder other creditors, and at

the same time not to devote any of his property then owned
by him and conveyed in a deed of trust to the payment of the
debts professedly secured by it, but to keep possession of it and
dispose of it as he pleased and to dispose of the proceeds as
he chose, then such deed is *per se* fraudulent on its face.   But
if in a particular case because of the character of the property
conveyed or attempted to be conveyed no such inference must
necessarily be drawn, then such deed of trust is not *per se*
fraudulent because of such provision." If the provisions of the
deed are such as will permit the grantor at his option to defeat
the same as a security for the debt ostensibly secured, then it
is *per se* void as to creditors hindered thereby, for the certain
inference is that it is a mere coloroble security to place the prop-
erty beyond the reach of existing creditors.   In the case of
*Sheppards* v. *Turpin,* 3 Grat. 399, Judge Daniel intimates that
if all the existing creditors had assented to the deed it would
not have been fraudulent *per se.*   At least he says he is not
prepared to so determine.

In the present case the creditor secured owned a book store
and fixtures.   He sold it to the grantor on condition that he
would secure payment of the purchase money by executing a
deed of trust thereon for this purpose.   Had he refused to do so
he never could have had possession of the property.   By reason
of the deed of trust he obtains possession thereof and not other-
wise.   The natural inference is that he is to carry on the book
business, replenish the stock, pay the expenses, and pay off the
indebtedness secured.   There were no existing creditors to be
defrauded.   Hence it is impossible to say in the language of
JUDGE GREEN "that the design of the grantor clearly shown by
these provisions was, when he executed the deed, to hinder
other creditors and at the same time not to devote any of his
property then owned by him and conveyed in the deed of trust
to the payment of the debts professedly secured by it, but to keep
possession of it and dispose of it as he pleased and to dispose
of the proceeds as he chose."   On the contrary the primary
design of the grantor participated in by the grantee was to se-
cure the purchase money and at the same time permit the
grantor to have such control and disposition of the property as
would enable him to pay the same.   In short the property was
the grantor's only on the condition that he should out of the
proceeds thereof pay therefor.   And even if there were existing

creditors these deeds could hardly be held fraudulent *per se* as to them for the reason that it is especially provided therein that "It is expressly understood that the said party of the first part shall not allow said stock of goods to run down and become depleted and worth less than the aggregate amount of said four obligations, and he shall keep said stock of goods insured in a sufficient amount for the benefit of said J. H. Horner to amply protect him against loss of fire. And upon failure of the said party of the first part to keep said stock of merchandise replenished and insured as aforesaid, then, at the request of the said J. H. Horner, said trustee shall enter upon and take charge of said stock of goods and sell the same in the manner prescribed by law as aforesaid." By this it is plainly apparent that the grantor could not sell or dispose of such stock of goods in such manner as to defeat the purposes of the trust. He could not sell in bulk but only at retail on condition that he would keep the stock a full security for the debts secured, and in case of failure to do so forfeit the right of possession immediately. This provision was not contained in the deeds heretofore passed on by the court and has not therefore been construed by it. But in all the cases in which the trust was held fraudulent *per se* as is said in *Sheppards* v. *Turpin,* 3 Grat. 398, "the debtor, whilst professing to dedicate his whole property to the payment of his debts then due, reserves to himself a power by which he may without any violation whatever of the express stipulations of the deed divert the whole of the property to uses and purposes wholly foreign to the leading object avowed." In the present case to allow the security to become impaired violates the express stipulations of the deed and forfeits all right to the property. Not only is this true, but section 2, chapter 74 of the Code, as re-enacted by chapter 4, Acts 1895, especially reserves the right to the debtor to secure the payment of purchase money without infringing on the rights of existing creditors. But the question here is as to whether a deed not fraudulent *per se* as to existing creditors, is fraudulent *per se* as to subsequent creditors having notice thereof both actual and constructive. It is well settled law that a person who contracts a debt with full notice of a deed and its provisions cannot be hindered, delayed or defrauded thereby. Bump on Fraudulent Conveyances, s. 300. In the case of *Williams* v. *Bank,* 11 Md., 250, the supreme court of Maryland says: "We have no doubt that subsequent

creditors where there is fraud in fact have a right to come in; but we cannot comprehend how a person who, at the time of becoming a creditor is aware of the existence of a deed, can, in any just sense be considered as disturbed, hindered, delayed or defrauded by it.   It seems to us to be a contradiction in terms to say, that a person is defrauded by an instrument when he deals with perfect knowledge of its existence and of its effect. If our registration laws have any operation they certainly do as they were designed give notice to all the world, so that there may be no deceit practiced on any one.   If registration laws do not give notice to the community which will bind it, then they are of no use whatever, for without registration deeds would be binding *inter partes.*"   This language was quoted and approved in the later case of *Kane* v. *Roberts,* 40 Md. 590.   In Jones on Chattel Mortgages, s. 381, it is said, "The policy of the registry laws is not consistent with the policy of the rule making void mortgages with power to use and sell mortgaged goods in the usual course of trade; and the latter rule should be made to yield to the more important general policy of the registry laws." *Peabody* v. *Langdon,* 61 Vt. 318; 17 Atlt. Rep. 781.   *Hughes* v. *Corry,* 20 Iowa 399; *Kreth* v. *Rogers,* 101 N. C. 263.   Registry is equivalent to the delivery of possession.   Any person has the right to give his property away or place it beyond the reach of subsequent creditors by conveyance, and if such creditors have notice of such conveyance at the time of the contraction of their debts, they cannot complain thereof as being in fraud of their rights, for they had no right to look to the property incumbered at the time of such conveyance, for the payment of their debts, and having full notice thereof there can be no fraud as to them.   It is entirely different where there is a secret trust as to the grantor and the conveyance is used merely as a mask to enable the grantor to hold and enjoy his property and is only colorable as to the debt ostensibly secured thereby, or the creditor at the time of the contraction of his debt has neither actual or constructive notice but is misled and deceived by the false appearance of wealth into giving a credit that he would not otherwise extend.   And it may be possible that such secret trust may be inferred from a deed where the power of sale and disposal of the proceeds is wholly unrestricted amounting in effect to an entire revocation of such deed.   A reservation of this character being entirely inconsistent with the ostensible

purpose of the deed would render it merely colorable and not made in good faith to secure the alleged debt, used solely for the purpose of deception and hence to secure to the grantor the illegal, under legal forms, enjoyment of his property in violation of his duty to discharge his just debts. The debt being fictitious such a deed would be fraudulent in fact as being contrary to the policy of the law that a debtor's property should be liable for his debts. To justify such an inference from the face of the deed alone, the power of the grantor to defeat or revoke it must be so plain or absolute as to allow of no other conclusion. Otherwise the subsequent creditor must show the fictitious character of the debt secured by extraneous facts and circumstances. The deeds under consideration are not of this character, but they permit the grantor to sell portions of the property only on condition that such sales do not impair the security for the purchase money lien and that the same be preserved intact. Otherwise the right of sale is revoked and the possession immediately forfeited. For the grantor therefore to attempt to defeat the purposes of the deed as a security for the purchase money or debt is to violate the plainly expressed stipulations therein contained. Hence it is impossible to infer from these deeds a secret trust in favor of the grantor, but their legitimate purpose is plainly expressed on their faces and in their terms, and this is that they were intended as a *bona fide* security for the purchase money and at the same time furnish the grantor the means to honorably and honestly discharge such purchase money without impairing the security therefor, and being duly recorded no subsequent creditors could possibly be deceived or defrauded thereby. The subsequent creditor having notice of the deeds at the time he extended credit could acquire no greater rights as to the property than the debtor, and this is the right to levy on and sell any portion or all of the property provided he did not impair the security or in lieu thereof satisfy the lien. This same conclusion was reached in the case of *Conaway's Admrs.* v. *Stealey,* 44 W. Va. 163, except in that case the power of sale was by parol instead of being entered on the face of the deed. This cannot affect the principles involved in any sense except to be more favorable to the *bona fides* of the deeds containing on their faces the extent of the reservations made by the grantor. "It matters not whether the agreement that the mortgagor may continue to deal in the property for

his own benefit is contained in the mortgage or exists in parol. * * * * It is equally effectual to show the fraudulent purpose for which the mortgage was given and the fraudulent intent which characterizes it. *Potts* v. *Hart,* 99 N. Y., 168. And for the same reason a reservation which is not fraudulent when made by parol cannot be made fraudulent by being reduced to writing and made a part of a recorded deed. It is only a question of proof and not one of fraud. So this case and that of *Conaway* v. *Stealey* are precisely the same in principle and the language used in that case is equally applicable here.

*Affirmed.*