# CHARLESTON.

GILBERT *et al. v.* PEPPERS *et al.*

Submitted September 23, 1908.   Decided March 23, 1909.

1. FRAUDULENT CONVEYANCES—*Creditor First Attacking—Preferences.*

   A general creditor who first attacks a fraudulent conveyance obtains a lien on the property by the institution of his suit, and preferences among all of such creditors are determined by the dates of the commencements of their suits, if separate suits are brought, or of the commencement of the suit and the filing of petitions, if all assert their rights in the same suit. (p. 358.)

2. SAME—*Judgment—Creditors—Lien.*

   Judgment creditors of the fraudulent debtor have liens on his real estate from the dates of their respective judgments and on his personal property from the dates of the acquisitions thereof by execution, attachment or otherwise, whether they be acquired before or after the conveyance, if they are preserved by compliance with registration and other laws provided for the purpose. (p. 359.)

3. CHATTEL MORTGAGES—*Mortgage of Stock of Goods—Retention of Possession.*

   A deed of trust on a stock of merchandise, disclosing on its face intention to permit the debtor to remain in possession and sell and dispose of the property, replenishing the sold goods by new purchases, is fraudulent *per se* and void as to creditors, subsequent as well as existing. (p. 363.)

4. FORMER DECISIONS DISAPPROVED.

   Principles announced in *Conway's Admr.* v. *Stealey,* 44 W. Va. 163, and *The Horner-Gaylord Co.* v. *Fawcett,* 50 W. Va. 487, re-examined and disapproved. (p. 361.)

5. FRAUDULENT CONVEYANCES—*Transactions Invalid—Persons Entitled to Assert Invalidity—Subsequent Creditors.*

   An honest debt may be so used as to hinder, delay and defraud creditors, no matter how it originated, nor that the creditor is a subsequent one. (p. 363.)

6. SAME—*Transactions Invalid—Preference to Secure Purchase Money.*

   The proviso in section 2 of chapter 74 of the Code, protecting a preference, given to secure purchase money, has no application to fraudulent conveyances. (p. 364.)

7. SAME—*Security for Purchase Money.*

   Section 5 of chapter 74 of the Code relates to title to, and

incumbrance upon, property, and the creditors contemplated therein are lien creditors only. (p. 364.)

Appeal from Circuit Court, Tucker County.

Bill by John J. Gilbert and others against Walter C. Peppers, James T. Darkey, and others. Decree for complainants, and James T. Darkey appeals.

*Reversed and Remanded.*

C. O. STRIEBY, for appellant.

GEO. P. SHIRLEY and CUNNINGHAM & STALLINGS, for appellees.

POFFENBARGER, JUDGE:

James T. Darkey, engaged in the mercantile business in the town of Davis, Tucker county, and owner of a stock of goods and property used in connection therewith, sold the same to Walter C. Peppers, on the second day of May, 1904, for the sum of $2,000.00, of which sum $200.00 was paid in cash. For the balance, Peppers executed his thirty-six promissory notes for the sum of $50.00 each, dated May 2, 1904, payable one each month thereafter, and a deed of trust to secure the payment thereof, by which he conveyed the property to C. O. Strieby for that purpose. Peppers took charge of the business and carried it on for about a year, paying nine of the notes and incurring a good deal of other indebtedness, from twelve to fifteen hundred dollars. Though dated May 2, 1904, the deed of trust was not acknowledged until June 14, 1904. Darkey neglected to record it until the 21st day of February, 1905. About the first day of May, 1905, Strieby took possession of the property and closed the store. He advertised it for sale on the 15th day of May, 1905, and adjourned the sale until May 30th. An application for the appointment of a receiver was made by Gilbert Bros. & Co. on May 24th, and, on the next day, A. L. Helmick was appointed special receiver and took charge of the property. Under a subsequent order of the court, he sold it, keeping the proceeds of the sale of the goods that were in the store at the time Peppers bought it separate from the proceeds of those subsequently bought and put into it by him. The bill set up indebtedness due the plaintiffs, amounting to $201.59, consisting of a note executed by Peppers for the sum of $118.73 and

an open account amounting to $82.86. It charged the existence of indebtedness to various other persons. The grounds of relief are, (1) that the deed of trust is fraudulent on its face; (2) that it is fraudulent in fact; (3) that the sale to Peppers was fraudulent; (4) that the provision in the deed of trust, purporting to give a lien in favor of Darkey on after acquired goods, does not constitute a lien thereon; (5) that the trustee was about to mingle the new stock with the old and sell it all for the satisfaction of Darkey's claim, to the detriment and injury of other creditors; (6) that the deed of trust constitutes an unlawful preference in favor of Darkey; and (7) that Peppers had been permitted to retain all the accounts, claims and demands due him and was collecting the same. The cause was referred to a commissioner to ascertain and report the debts due from Peppers to the plaintiffs and other creditors who had come into the suit by petition, and was submitted on his report, the pleadings and the depositions taken and a decree pronounced, holding the deed of trust fraudulent as to the creditors of Peppers and ordering a *pro rata* distribution of the proceeds of the property among them, including Darkey. From this decree, Darkey has appealed. The creditors are also dissatisfied and have cross-assigned errors, their contention being that the other creditors should have been given preference over Darkey in the distribution. As the entire proceeds of the sale amounted to only $709.25, of which $230.00 arose from the sale of the after acquired goods, the position taken by the general creditors would exclude Darkey entirely.

The right of the plaintiffs, Gilbert Brothers, to maintain this suit at all is challenged on the ground that they were not in condition to proceed in the manner in which they did. The note was not then due and the open account bore date on May 17th, the day before the institution of the suit. We held in *Frye* v. *Miley*, 54 W. Va. 325, that an ordinary suit in equity to set aside a fraudulent conveyance cannot be maintained by a creditor whose debt is not due, and that such a creditor, in order to obtain relief, must invoke attachment. If the plaintiffs claimed no debt except the one evidenced by the note, the principle declared in *Frye* v. *Miley* might require a reversal of the decree and dismissal of the bill. Whether it would or not, in view of the intervention of other creditors, we need not decide,

however, since the open account, bearing date one day before the institution of the suit, constitutes a debt for which it could be instituted, and jurisdiction having been thus conferred, the court could make provision for debts not due and payable as well as those that were.

Although the decree says, by way of recital, the deed of trust is fraudulent because of failure to record it, the fund is disposed of as if it had been regarded as creating an unlawful preference. All the creditors are permitted to share therein ratably. This is not the rule of distribution or priority in cases in which deeds are set aside for fraud. The creditor who first attacks a fraudulent conveyance obtains a lien by the institution of his suit, and preferences among all of them are determined by the dates of the commencements of their suits, if separate suits are brought, or of the commencement of the suit and the filing of petitions, if all assert their rights in the same suit. *Foley* v. *Ruley,* 50 W. Va. 158; *Clark* v. *Figgins,* 31 W. Va. 156.

The decree plainly applies the provisions of section 2 of chapter 74 of the Code, determining the basis and mode of relief in cases of transfers and charges made by insolvent debtors, attempting to prefer creditors or to secure some of their creditors to the exclusion and prejudice of others. The provisions of said section, however, are clearly inapplicable, because the suit was not brought within the time prescribed therein. The deed of trust was made on the second day of May, 1904. Both grantor and grantee testify to this fact and the deed of trust itself bears that date. Besides, the record shows the contract of sale of the store bearing the same date, and Peppers then took charge of the business. The failure to have it acknowledged on that day is accounted for in the testimony of Peppers and nothing to the contrary is disclosed, except the date of the acknowledgment, June 14. It could do no more than raise a presumption, and it seems not to have even that weight. As between the parties, the deed of trust would be valid without any acknowledgment. The acknowledgment is for the purpose of recordation and the recordation subserved the purpose of constructive notice to creditors and subsequent purchasers. The presumptions arising from the date of acknowledgment, if any, is not conclusive as to the date of signing and delivery. This conclusion is fully sustained by the principles and reasoning

in *Colquhoun* v. *Atkinsons,* 6 Munf. 550. Any relevant evidence
is admissible to prove the real date of delivery of a deed. *Duval*
v. *Bibb,* 4 H. & M. 113. The deed of trust was made on the
second day of May, 1904, and not admitted to record within
eight months after the making thereof, nor was the suit brought
within one year after it was made, and the statute provides that
the suit must be brought within one year after the transfer or
charge was made, or within four months after it was recorded,
if recorded within eight months after it was made. Otherwise,
the transfer or charge is valid as to any preferences or priority
thereby given. The general limitation imposed by this provision
is one year from the date on which the transfer or charge was
made. No suit can be brought after the expiration of such
year, under any circumstances; but the limitation will be short-
ened, if the instrument creating the transfer or charge is re-
corded within eight months. When it has been so recorded we
must count from the date of recordation and sue within four
months thereafter.

There is no provision in the deed of trust requiring or author-
izing the trustee to take possession of the stock of goods; and
it clearly contemplates possession by the grantor until default
in payment of some of the notes or the interest thereon. The
following clause, under several decisions of this Court, imports
intention that the grantor shall retain possession: "The said
notes are for the purchase money on the said stock of goods
and fixtures; it is agreed and understood that the 'conveyance'
of the said stock of goods shall go as to all future goods that
may be placed in the said stock, and that the party of the first
part agrees to keep the said stock up in good condition and not
be allowed to fall to a valuation of less than it is now." *Claflin*
v. *Foley,* 22 W. Va. 434; *Shattuck* v. *Knight,* 25 W. Va. 590,
599.

Until a comparatively recent date, this Court held all deeds
of trust on stocks of mercantile goods, allowing the debtor to
remain in possession of the property and sell and dispose of
the same, fraudulent and void *per se. Shattuck* v. *Knight,* 25
W. Va. 590; *Klee* v. *Reitzenberger,* 23 W. Va. 749; *Livesay's
Ex'r* v. *Beard,* 22 W. Va. 585; *Claflin* v. *Foley,* 22 W. Va. 434;
*Gardner & Co.* v. *Bodwing's Adm'r,* 9 W. Va. 121; *Kuhn* v.
*Mack,* 4 W. Va. 186. In *Shattuck* v. *Knight,* Judge GREEN

stated the doctrine as follows: "In a case where a stock of goods, wares and merchandise is conveyed in a deed of trust to secure debts, the property not to be sold for a considerable time, if there be any provisions in the deed, which clearly indicate, that the grantor, when he made it, intended to remain in possession of the property until the day of sale, such deed will be regarded as *per se* fraudulent, precisely as it would be, had there been in it an express provision, that the grantor should remain in possession of the goods until the day of sale. If such intention appears on the face of the deed, whether it be express or implied, is entirely immaterial." The principle upon which the decisions above referred to stand has been elucidated in a number of them and is well understood by members of the legal profession. Such a deed of trust, while professing to secure a debt, leaves the debtor in absolute control of the property and free to sell it and appropriate to his own use the proceeds, and, for that reason, affords the creditor no security in point of fact, so long as the parties to the instrument see fit to let it operate according to the intent disclosed. As between them, it would no doubt secure the debt after maturity and be enforcible, but it discloses on its face a collusive agreement between debtor and creditor to the prejudice and injury of other creditors of the former. So long as they let it operate in accordance with the intention so disclosed, it does not secure the debt described in it, and yet, if valid, it would preclude any other creditor from resorting to the property for satisfaction of his debt. In *Claflin* v. *Foley,* cited, Judge SNYDER said: "Such a conveyance is certainly more a protection to the debtor than it is a security to the creditor, and is therefore condemned as fraudulent and void as to the creditors of the grantor by numerous decisions in Virginia and this State." In *Lang* v. *Lee,* 3 Rand. 410, Judge Carr said: "Is it not completely a *felo de se?* A security is taken on goods, and they are left in the possession of the debtor * * * * with a power to sell and dispose of them as he may think proper; no check whatever. Does not this resolve the whole matter into personal security?" In *Sheppards* v. *Turpin,* 3 Grat. 399, the court said: "Can such a contract between debtor and creditor, the avowed purposes of which rest for their execution upon the good faith of the former, unguarded even by a single covenant, and which may be entirely

frustrated by his imprudence or misfortune in trade, be regarded in legal contemplation, as constituting a valid security or specific lien on the property conveyed as against any creditor postponed by it?" A fuller exposition of the principle will be found in Bump on Fraudulent Conveyances, sec. 116. In a note to that section, the holdings of the various courts throughout the country are given, and it will appear, by reference thereto, that such deeds of trust and mortgages are held fraudulent and void *per se* in Alabama, Colorado, Connecticut, Delaware, District of Columbia, Florida, Idaho, Illinois, Kansas, Massachusetts, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, Ohio, Oklahoma, South Carolina, Tennessee, Texas, Virginia and Wisconsin. In the following states, they are said to be presumptively not conclusively, fraudulent: Arkansas, New Jersey, North Carolina, South Dakota and Vermont. In some of the states, Kentucky, Maine, Michigan, North Dakota and Rhode Island, there is no presumption either way. The question is submitted to the jury as one of fact. In California, a stock of merchandise cannot be mortgaged at all, the statute prohibiting it. In Georgia, such mortgages are legalized by statute, but even there retention of possession by the debtor is regarded as a circumstance, tending to show bad faith. The state of the law in Iowa is most peculiar and exceptional. Such mortgages are treated as transfers of title and the registration statutes applied, but there, fraudulent intent, a matter of fact, will invalidate it.

For a great many years, the doctrine of our cases cited has been adhered to by this Court, but in *Conway* v. *Stealey,* 44 W. Va. 163, the rule of the Iowa supreme court, as recognized in *Etheridge* v. *Sperry,* 139 U. S. 266, was adopted and a departure so made. The only other case cited in the opinion in *Conway* v. *Stealey,* as supporting the views therein expressed, is *Kreth* v. *Rogers,* 101 N. C. 263, and, as has been noted, that decision was pronounced by a court which observes an entirely different principle from that adopted by ours in the earlier cases. In North Carolina, such deeds are never held to be conclusively fraudulent. They are only presumptively fraudulent and the presumption is rebuttable. *Conway* v. *Stealey* was followed in two later cases, *The Horner-Gaylord Co.* v. *Fawcett,* 50 W. Va. 487, and *Bartles & Dillon* v. *Dodd,* 56 W. Va. 383. These de-

cisions do not wholly repudiate the doctrine of the earlier cases. On the contrary, they admit it as the general rule, but establish an exception thereto. The grounds of this exception, as stated, are (1) that the debt secured represents purchase money of the property; (2) that there are no prior or existing creditors who could be prejudiced or against whom any fraud in the transaction could have been directed; and (3) that the recordation of the deed of trust constitutes notice of the encumbrance to all subsequent creditors, the only class of creditors who could be injured. Upon mature consideration, we have concluded that these circumstances do not constitute any exception and that the reasoning, by which they were made to do so, in the three cases just mentioned, is fallacious and unsound. That the debt is for purchase money of the mortgaged property does not change its character as a debt. A debt so created may be made and used as an instrument for the perpetration of a fraud or a cloak for fraudulent conduct, just as effectively as a debt originating in any other manner. That it is an honest and *bona fide* debt is a mere circumstance bearing on the question of good faith, when the inquiry is whether there was fraud in fact. It is perfectly apparent that an honest debt may be so used as to hinder and delay creditors and defraud them of their rights, just as the payment of a valuable consideration, even the full value of the property in cash, does not avail to protect a purchase in fraud of creditors, when the intention, on the part of both purchaser and seller, to perpetrate such a fraud has been established. This proposition is elementary in the law of fraudulent conveyances. If, in the case of a *bona fide* indebtedness, honest and meritorious in all respects, the debtor and creditor agree to use that debt so as to conceal and cover up property of the debtor, so as to shield it from other creditors, and thus establish a secret trust in favor of the debtor, so that the transaction operates, not to secure the creditor, but only to shield the property of the debtor and withhold if from other creditors, this honest debt will become the means of hindering and delaying such other creditors and depriving them of the means of satisfying their debts. Hence, it is perfectly clear that the honesty or verity of the debt mentioned in such a deed of trust is nothing more than a circumstance bearing on the good faith of the transaction. Nor can the fact

that the creditors are subsequent and not pre-existing make any difference. That subsequent creditors may set aside a deed for fraud, directed against them, has been decided by this and many other courts. *Silverman* v. *Greaser,* 27 W. Va. 550. "But if it be shown that there was *mala fides* or fraud in fact, in the transaction, whether the actual fraudulent intent relates to existing creditors or is directed exclusively against subsequent creditors, the effect is precisely the same, and subsequent creditors may, upon the strength of such fraud, successfully impeach the conveyance." *Lockhard* v. *Beckley,* 10 W. Va. 87; *Miller* v. *Gillispie,* 54 W. Va. 450; Moore on Fraud. Convey. pp. 186-7-8-9. The three decisions of this Court just mentioned involved questions of fraud in fact and not fraud in law, it is true, but no reason is perceived why there should be a difference between fraud in fact and fraud in law, as regards the rights of creditors. If fraud in fact directed against subsequent creditors will vitiate a deed or other instrument of conveyance, why should not the same thing, written at large on the face of the instrument, have the same effect? Let it be supposed that the owner of a stock of goods, owing nothing, incur a debt and secure it on the merchandise by such a deed of trust as we have here, then on the next day incur further indebtedness. Is not that deed as much an obstruction of the subsequent creditor's right to resort to the property as it would be, if his debt had been previously contracted? As to both classes of creditors, such a deed affords protection to the debtor and no security to the creditor, if it is to operate according to the intent disclosed on its face. That the attacking creditors in all the cases decided by this Court, in which deeds of trust were held fraudulent *per se,* prior to the decision in 44 W. Va., happened to be existing creditors, is a mere circumstance which does not affect the principle and affords no reason for saying it is not applicable in the case of subsequent creditors. The language of the old decisions is that such a deed of trust is fraudulent and void as to creditors. The terms in which the rule has been expressed do not limit it to existing creditors, and all the reasons for holding it void as to existing creditors are applicable to the case of a subsequent creditor. He has just the same right at law and in equity to resort to the property of his debtor for satisfaction of his debt as a prior creditor, and the

deed, if permitted to stand, would bar him just as effectually. How, then, can it be said that it does not hinder, delay and defraud him within the meaning of the statute against fraudulent conveyances? The exception made in section 2 of chapter 74 of the Code, protecting securities given for purchase money, does not apply to this question. That section relates to preferences, not fraud, and we need hardly remark that the distinction between fraud and preference of a creditor is well known and universally recognized. It only provides that a security given for purchase money of property by an insolvent debtor shall be valid, although it creates a preference in favor of the creditor. This it says by way of exception to the general declaration of legislative will that all securities given by such a debtor for the purpose of preferring any creditor shall be taken for the benefit of all his creditors who shall claim the benefit thereof, not that it shall be deemed fraudulent as to anybody. The argument founded upon the recordation of the deed of trust is equally fallacious. Section 5 of chapter 74 of the Code, declaring contracts and deeds void as to creditors and subsequent purchasers for valuable consideration without notice until and except from the time that it is duly admitted to record in the county where the property embraced in such contract or deed may be, does not contemplate general creditors. As to them, it is valid, whether recorded or not. A mere personal debt bears no relation to the property of the debtor, since it does not constitute a lien thereon. Before a creditor can claim any legal right in respect to the property of his debtor, or any interest therein, in law or equity, he must, by some means, acquire a lien thereon, as by an attachment or reduction of his debt to judgment. *Moore* v. *Tearney*, 62 W. Va. 72; *McClandish* v. *Keen*, 13 Grat. 615; *Dulaney* v. *Willis*, 95 Va. 608. In *McClandish* v. *Keen*, Judge Lee, speaking of this statute, said: "It was not designed to make any change in the kind or character of the debts which would entitle creditors to assail an unrecorded deed, but to define the class of creditors as to whom if their debts were of the kind and character authorizing them to call it in question, an unrecorded deed would be void. This is apparent from the context, for the section declares that the words 'creditors' and 'purchasers' where they occur, are not to be restricted to the protection of creditors of and purchasers 'from the grantor,' but are

to embrace all who but for the deed would have had title to the subject or a right to subject it to their debts. It was intended to settle by statutory provision the question so much controverted in the cases of *Pierce* v. *Turner,* 5 Cranch's R. 154; *Land* v. *Jeffries,* 5 Rand. 211; and *Thomas* v. *Gaines,* 1 Grat. 347; and which was decided in the last named case in conformity to the decision in *Anderson* v. *Anderson,* 2 Call. 198; and overruling *Pierce* v. *Turner* and the opinions of Judges Carr, Coalter and Brooke in *Land* v. *Jeffries;* but it made no change in the well settled rule which required a creditor who would assail an unrecorded deed to show that he had some lien by judgment or otherwise entitling him to charge the subject conveyed, specifically." It is to be observed here, again, that recordation, required by this statute, has no relation to the subject of actual or legal fraud. It relates to title and rights respecting property in cases in which the parties are free from fraudulent intent. Its object is in conformity with the purpose of the whole scheme of registration of title papers. Its mandate is that the claimant of title to property or a lien upon property shall make the evidence thereof public so that others, dealing with the property, not merely with the owner of it, may know what its status is, who owns it, and what encumbrances are upon it. It declares the deed void as to lien creditors and subsequent purchasers for failure to record it, not fraudulent as to anybody or for any cause.

Much as we regret to disapprove and overrule decisions of this Court, we are constrained by the weighty reasons of public policy, which, centuries ago, impelled the passage of the statutes against fraudulent conveyances, to overrule *Conway* v. *Stealey,* and *The Horner-Gaylord Co.* v. *Fawcett.* In our judgment, they open the door to the perpetration, with impunity, of fraudulent practices, by means of such sales and deeds of trust as are disclosed by this record. There may be, and no doubt are, instances in which the intention of the parties is free from fraud, but this form of security, if upheld, will afford the means of robbing subsequent creditors without fear of detection, and with the assurance that the courts are powerless to prevent it. A failing merchant, or a solvent one having a store in a bad place, would be required to do no more, in order to profit at the expense of wholesale dealers, than make a pretended sale to an

irresponsible party on credit, at any price they may see fit to adopt, and take such a deed of trust on the stock as we now have under consideration, and let the store continue to operate under it as long as the pretended purchaser can obtain credit. *Bartles & Dillon* v. *Dodd* may possibly be sustainable on principle, as the property, except a small portion thereof, was not consumable in its use, nor perishable, nor intended to be sold.

For the reasons given, we reverse the decree and remand the cause for distribution of the fund in accordance with the principles herein stated.

*Reversed and Remanded.*