### In re CHARLES TOWN LIGHT & POWER CO.

(District Court, N. D. West Virginia. November 4, 1912.)

1. BANKRUPTCY (§ 228*)—REFERENCE—QUESTIONS OF FACT—REFEREE'S DECISION—REVIEW.

A referee's judgment on questions of fact raised in a bankruptcy proceeding must be given favorable consideration on a petition to revise, and in case of doubt the question must be solved in favor of his finding.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 387; Dec. Dig. § 228.*

Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.]

2. CORPORATIONS (§ 232*)—STOCK—VALUE—PROPERTY.

Under the law of West Virginia, the fact that property received by a corporation in full payment of stock issued is taken at an overvaluation will not make the holder liable as for an unpaid subscription until the transaction has first been impeached for fraud on the corporation by a proceeding instituted by or on behalf of the corporation itself.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 879, 880, 883, 884; Dec. Dig. § 232.*]

3. CORPORATIONS (§ 232*)—STOCK—PAYMENT IN PROPERTY—OVERVALUATION—ASSENTING STOCKHOLDERS—ESTOPPEL.

Stockholders of a corporation existing at the time of a transfer of property to the corporation in return for stock at an overvaluation, who assented to and confirmed the contract, are estopped from thereafter impeaching it, as are also subsequent creditors under ordinary conditions, who extended credit to the corporation on the strength of the property so acquired.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 879, 880, 883, 884; Dec. Dig. § 232.*]

4. FRAUDULENT CONVEYANCES (§ 27*)—DEBTS—SECURITY—CORPORATE BONDS.

Where the principal stockholder and manager of a corporation personally borrowed money from certain banks, which he advanced to the corporation to improve and operate the property and to increase its value in the interest of subsequent creditors, and thereafter deposited certain of the corporation's bonds to secure the banks, such deposit did not constitute a fraud as against subsequent creditors of the corporation.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 66–71; Dec. Dig. § 27.*]

5. CORPORATIONS (§ 432*)—PLEDGES—BONDS—TREASURER'S AUTHORITY.

Evidence held to warrant a referee's finding that a corporation's treasurer had authority to pledge bonds of the corporation to certain banks to secure loans procured by the treasurer for the corporation's benefit.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1717, 1718, 1724, 1726–1737, 1743, 1762; Dec. Dig. § 432.*]

6. BANKRUPTCY (§ 310*)—PREFERRED CLAIMS—DEED OF TRUST—OMISSION TO RECORD—"CREDITORS."

Bankr. Act July 1, 1898, c. 541, § 64b, 30 Stat. 563 (U. S. Comp. St. 1901, p. 3447), provides that debts owing to any person who by the laws of the states or the United States is entitled to priority shall be entitled to priority under the bankrupt law, and Code W. Va. 1906, c. 74, § 3103, declares that a deed of trust shall be void as to creditors until and except from the time it is duly admitted to record. Held, that since the word "creditors," as used in section 3103, has been construed by the Supreme Court of Appeals of the state to mean creditors who have secured a lien on the property, and not general creditors, bondholders of the

bankrupt were not precluded from claiming their debts as secured by the bonds, as against general creditors, because the deed of trust was withheld from record.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 501–507; Dec. Dig. § 310.*

For other definitions, see Words and Phrases, vol. 2, pp. 1713–1727; vol. 8, pp. 7622, 7623.]

7. BANKRUPTCY (§ 151*)—BANKRUPT'S TRUSTEE—PURCHASER FOR VALUE.

A bankrupt's trustee, though declared by the amended act to have the rights of a judgment creditor, as well as the power specifically conferred by the bankrupt act, is not to be regarded as a purchaser of the bankrupt's property for value.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §·193; Dec. Dig. § 151.*]

8. BANKRUPTCY (§ 310*)—LIEN CREDITORS—BONDHOLDERS—RIGHT TO PRIORITY—LACHES.

Where bonds of a bankrupt corporation were given to certain banks to secure loans made for the corporation's benefit, failure of the banks to see that the deed of trust securing the bonds was promptly recorded, and to secure prompt payment of the interest coupons attached to the bonds, did not constitute such laches as deprived the banks of their right to claim that their debts were secured by the bonds.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 501–507; Dec. Dig. § 310.*]

In Bankruptcy. In the matter of bankruptcy proceedings of the Charles Town Light & Power Company. On petition to revise an order of the referee touching certain mortgage bonds and their priority. Ruling affirmed.

See, also, 183 Fed. 160.

On the 10th day of December, 1900, Charles E. Ehrehart purchased from Gibson & Stern, trustees in two deeds of trust, at public auction, all the property, real and personal, rights and franchises, of the Charles Town Electric Light, Heat & Power Company, a corporation, and the trustees, by deed dated 10 days after, conveyed the same to him. The purchase price was $10,-150. On November 18, 1901, he and four associates secured the incorporation of the bankrupt, the Charles Town Light & Power Company. Prior to this incorporation, Ehrehart expended some considerable amount of money upon the plant. One day after the incorporation of the bankrupt, he conveyed the plant to it. The consideration set forth in the deed is $35,000 cash. It is claimed this $35,000 was not paid in cash however, but was to be payable, $19,000 in stock of bankrupt, and $16,000 in its obligations. Another piece of property, known as the "Watson Mill Property," was also purchased by the bankrupt from Kate M. Reiley and conveyed by her to it by deed of date November 19, 1901. The consideration set forth in the deed for this conveyance was $15,000, paid and receipted for. It seems, however, that it was not paid in cash, but was to be payable, $11,000 in stock of the bankrupt, and $4,000 in its obligations. Ehrehart claims to be the assignee of Mrs. Reiley, and to have been entitled, therefore, on November 18, 1904, to $30,000 of the bankrupt's stock, and to a balance of $5,000 of its obligations. The interests of his associate shareholders at that date, it is admitted, were nominal. He further claims that for advances made in improvements and operation up to that date the company was indebted to him about $20,000. He produces checks for considerable amounts so advanced. It is disputed that his debt in this particular was so large, or his interests were so great; but it seems clear that he was the practical owner of the plant, and was, on November 18, 1904, its only creditor. Ehrehart and his associate stockholders, in the course of the operation of the plant at various times prior to November 18,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

1904, had borrowed sums of money upon their individual credit from the Hanover Saving Fund Society and the People's Bank of Hanover, aggregating $12,816.79, which had been furnished to and expended by the bankrupt in such operation and improvements. Between November 18. 1904, and March 30, 1905, additional loans were made by these two banks to Ehrehart, and by him used .for the same purposes, of some $3,363.69, making a sum total of $16,450.48 so loaned by them. On this November 18, 1904, the stockholders and directors of the bankrupt held meetings and ratified an issue of ·$18,000 of coupon bonds and the execution of a deed of trust, bearing date on that day, upon all the franchises and property of the company. This·deed of trust was duly executed to Paul Winebrenner, the treasurer of the Hanover Saving Fund Society. At the time, Ehrehart was the substantial owner of the bankrupt's stock (although not formally issued), its sole creditor so far as disclosed, one of its directors, and its treasurer. The deed of trust was delivered to him, as also the mortgage bonds. It is insisted, and testified to by him and by Gibson, the president of the company, that resolutions · were also at this meeting passed by stockholders and directors, directing · these bonds to be turned over to Ehrehart to indemnify him for the sums advanced by him to it—in other words, for its indebtedness to him. No record of the passage of such resolutions appears. The records were extremely loosely kept, not in a minute book, but upon loose leaves of paper. Ehrehart took the mortgage and bonds to Winebrenner, the trustee, and had him sign the identification certificate on each of the bonds. The deed of trust was also delivered to him. Thereupon he took up the individual·obligations of himself and associates to these two banks, gave to them his sole.notes or obligations, and deposited with them these bonds as collateral security therefor. He did not record the mortgage, although. it was delivered to him for that purpose. He paid interest for a time, but at last, in 1909, ceased doing that. The banks had no knowledge that the deed of trust was not recorded until in November, 1909, when Winebrenner, the trustee, had it entered of record under date of November 6, 1909. Meantime the company was becoming involved in debt to others. Two creditors, so extending credit to it, before doing so, sent their attorney to Charles Town and had him make a careful search of the records to ascertain what liens existed, if any, against the company's property. He found no record of this deed of trust. Thereupon he went to Moore, the secretary of bankrupt, and asked him if there were any other liens existing against the property, other than those found of record, and was informed by him that there were none. On March 3, 1910, involuntary petition in bankruptcy was filed. The company disputed the right to be adjudged bankrupt. This question was considered by this court, a written opinion filed (183 Fed. 160), and, for reasons therein set forth, on March 13, 1911, the company was adjudged bankrupt, and the cause referred to James D. Butt, referee, for adjudication. This action was affirmed by the Circuit Court of Appeals for this Circuit: 184 Fed. 986, 106 C. C. A. 488. Ehrehart has become bankrupt. Before the referee the two banks have filed proof of claims, in which they assert a lien priority by reason of the bonds held by them and the deed of trust to secure them. The referee has allowed their claims, and given them the preference contended for. It is to revise this action that the petition under consideration has been filed by the trustee.

A. Moore, Jr., of Berryville, Va., and Geo. M. Beltzhoover, Jr., of Charles Town, W. Va., for trustee.

Gans & Haman, of Baltimore, Md., and Brown & Brown, of Charles Town, W. Va., for bondholders.

DAYTON, District Judge (after stating the facts as above). It is insisted by the trustee and objecting creditors that (1) the banks have no provable claims against the bankrupt, because (a) the bankrupt was not on November 18, 1904, indebted to Ehrehart, and (b) Ehrehart had no authority to pledge the bonds as collateral for his personal in-

debtedness; (2) that, if the banks have provable claims, they are not entitled to priority over the unsecured creditors, because (a) the mortgage securing the bonds constitutes a voidable preference, and (b) the mortgage was fraudulently withheld from record, and, therefore, is void as security; (3) that by their negligence and laches the banks have estopped themselves from asserting their claims, or, if allowed to assert them, they should be postponed in payment to the debts of all other creditors.

[1-4] Carefully considered, I am not inclined to think that much difficulty arises in determining the first objection in its first aspect. Its determination involves purely a question of fact. The referee's judgment on such questions must always be given favorable consideration, and in cases of doubt be solved in favor of his finding. By the very complete and able opinion filed by him it is clearly shown that the evidence upon which he bases his findings was very carefully considered by him. A review of this evidence convinces me that the bankrupt was indebted to Ehrehart on November 14, 1904, for sums of money which he had advanced to it. It cannot be successfully contended that Ehrehart had sold to it property at an overvaluation, and should be held to be indebted for the difference between this overvaluation and its true value, to offset this indebtedness for advances made, because it has been held by the Supreme Court of Appeals of this state that the fact that property, received by a corporation in full payment of stock issued, is taken at an overvaluation, will not make the holder of such stock liable as for unpaid subscription until the transaction has first been impeached for fraud upon the corporation. Bank v. Coal & Coke Co., 51 W. Va. 60, 41 S. E. 390. Such impeachment for fraud must be instituted and prosecuted by the corporation itself, or at least by some of its stockholders or creditors existing at the time the sale was made. Stockholders existing at the time, who assented to and confirmed the contract of purchase (as all did in this case), are estopped afterwards from impeaching it. Subsequent creditors, who have extended credit to the corporation upon the strength of the property so acquired, will certainly not be permitted to impeach the purchase under any ordinary conditions. These principles are clearly determined in Old Dominion Co. v. Lewisohn, 210 U. S. 206, 28 Sup. Ct. 634, 52 L. Ed. 1025, and cases therein cited. In the case here Ehrehart himself owned the property, and in turning over the property became the substantial owner of all of the stock of the corporation and its sole creditor. These bank debts were not incurred for money which Ehrehart secured in payment for the property, but for additional sums borrowed by him from the banks and advanced by him to the corporation for purposes of improving and operating the property—all to the end of increasing its value in the interest of subsequent creditors. I am wholly unable, from the evidence, to conceive any extraordinary conditions justifying subsequent creditors in regarding themselves defrauded in the premises.

[5] Touching the second aspect of this first objection, as to Ehre-

hart's authority to pledge the bonds to these banks, it would be entirely sufficient to say that the undisputed testimony of Gibson and Ehrehart is that such authority was directly given by vote of the directors; but, even if this were not so, the circumstantial evidence, it seems to me, is entirely sufficient to indicate such authority. It is reasonable to presume that these bonds were authorized by the company to issue in order to settle its outstanding debts; that Ehrehardt, the treasurer of the company, would be the one selected to negotiate settlement of these debts with these bonds; that, being substantially the sole creditor of the company at the time, his taking over of the bonds in payment of his debt would be both satisfactory and ratified by the company; and the fact that no complaint was at the time or since made by the company, or any of its officers or directors, is strong presumptive evidence, in absence of anything to the contrary, that his negotiation was satisfactory and acquiesced in.

[6] The more serious question in the case arises under the third objection stated, which includes substantially both aspects of the second, and may be stated as a single proposition in these words: Have these banks, by either fraudulently concealing their deed of trust, or by reason of negligently withholding it from record, lost the right to prove their debts at all, or, if not, to assert their claim of priority over unsecured creditors? In other words, have they estopped themselves from asserting either debts or priorities, or both? What debts are entitled to priority under the bankrupt law? Section 64b says, among other things:

"Debts owing to any person who by the laws of the states or the United States is entitled to priority."

Section 3103 of the Code of West Virginia, 1906, provides that among other contracts a deed of trust—

"shall be void as to creditors * * * until and except from the time that it is duly admitted to record."

What kind of creditors are referred to? The Supreme Court of Appeals, in Gilbert v. Peppers, 65 W. Va. 355, at page 364, 64 S. E. 361, at page 365 (36 L. R. A. [N. S.] 1181), referring to this section of the Code says:

"It does not contemplate general creditors. As to them, it is valid, whether recorded or not. A mere personal debt bears no relation to the property of the debtor, since it does not constitute a lien thereon. Before a creditor can claim any legal right in respect to the property of his debtor, or any interest therein, in law or equity, he must, by some means acquire a lien thereon, as by attachment or reduction of his debt to judgment."—citing Moore v. Tearney, 62 W. Va. 72, 57 S. E. 263; McCandlish v. Keen, 54 Va. 615; Dulaney v. Willis, 95 Va. 608, 29 S. E. 324, 64 Am. St. Rep. 815.

It would seem clear, therefore, that under the laws of West Virginia these banks would have a lien as against these unsecured creditors, represented by the bankrupt trustee, even if the deed of trust had never been recorded, and that the only risk they ran, by not recording it, was that some other creditors might have secured priority over them by obtaining judgment or other liens in the intervening time. This is based upon the mere neglect to record, and does not

refer to deeds of trust executed fraudulently, or to secure, unlawfully, perference from an insolvent debtor, knowing him to be insolvent, and to have fraudulent purpose in view. Even in such cases, ordinarily federal courts, approving Chancellor Kent's saying in Wiggins v. Armstrong, 2 Johns. Ch. (N. Y.) 144, that "unless he [the creditor] has a certain claim upon the property of the debtor he has no concern with his frauds," will not allow a simple contract creditor to assail such conveyances for fraud. Scott v. Neely, 140 U. S. 106, 11 Sup. Ct. 712, 35 L. Ed. 358; Cates v. Allen, 149 U. S. 451, 13 Sup. Ct. 883, 977, 37 L. Ed. 804.

[7] But exception is made in case of a trustee in bankruptcy, who is held, as to such conveyances and preferences, to have "all the right of a judgment creditor, as well as the power specifically conferred by the bankrupt act." Dudley v. Easton, 104 U. S. 99, 26 L. Ed. 668. He is not, however, to be held a purchaser for value. Hewit v. Berlin Machine Works, 194 U. S. 296, 24 Sup. Ct. 690, 48 L. Ed. 986. Under these conditions, it seems to me that the very recent case of Holt, Trustee, v. Crucible Steel Co., 224 U. S. 262, 32 Sup. Ct. 414, 56 L. Ed. 756, is conclusive. The case involved the exact question that we have here, to wit, the validity, under the recording law of a state, of an unrecorded mortgage as against creditors who became such after it was given, and without knowledge of it, where none of them had secured a lien upon the property. The question arose, as here, in a bankruptcy proceeding. The Supreme Court there affirmed the Circuit Court of Appeals of the Sixth Circuit, holding that the effect to be given to an unrecorded chattel mortgage under sections 67a and 67b must be determined by the recording law of the state, and that under that law the question turns on who are included in the term "creditors," and that where such term has been held by the state courts not to include creditors who have no liens against the property, as has been held in this state (Gilbert v. Peppers, supra), such unrecorded mortgage gives preference to those secured thereby as against such unsecured creditors. In view of this recent and authoritative ruling, I deem it unnecessary to consider, to any extent, the effect of sections 60a and 60b (Act July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445]) and the changes made therein by the amendments of 1903 (Act Feb. 5, 1903, c. 487, § 13, 32 Stat. 799 [U. S. Comp. St. Supp. 1909, p. 1314]) and 1910 (Act June 25, 1910, c. 412, § 11, 36 Stat. 842 [U. S. Comp. St. Supp. 1911, p. 1506]). It is sufficient to say that I think Judge Cochran, in Debus v. Yates (D. C.) 193 Fed. 427, has very learnedly and clearly considered the question, and that I am in full accord with his views.

[8] Finally, the matter narrows to the contention made that the conduct of these banks has been so tainted with laches and negligence as to practically make their claim of priority fraudulent and void, or has at least estopped them from asserting it. This involves a question of fact largely as regards their conduct. There is no doubt as to their loaning to Ehrehart the money, and claimed that they took these bonds as collateral to secure such loans, that they received them from the treasurer of the company, and that they understood the money

had been borrowed by Ehrehart for the company's use and benefit. Sifted to the bottom, the charge of fraud and estoppel can be based, so far as the banks are concerned, upon only two delinquencies: (a) Failure to see to it that the deed of trust was promptly recorded; and (b) failure to secure prompt payment of the interest coupons attached to the bonds. The Supreme Court, in the Holt, Trustee, Case, has said that the first is not sufficient, and I am clearly convinced the second is not, to deprive them of their lien.

I can see no conflict with these conclusions in the ruling of Moore v. Tearney, 62 W. Va. 72, 57 S. E. 263, relied on by counsel. On the contrary, it is there expressly held, as in Gilbert v. Peppers, that, as against unrecorded conveyances, only lien creditors are protected, while, touching the question of fraudulent conduct, the facts were vitally distinct and different. There Tearney, a father-in-law, took two absolute deeds of conveyance from his son-in-law, by which all creditors, lien or otherwise, were designed to be excluded, kept them in his possession unrecorded, until his death six years after, in the meantime allowing the son-in-law to remain in possession, claim the lands as his own, have them assessed in his own name, and to insure in his own name the buildings thereon.

Nor do I overlook the bitter outcry against the injustice done the creditors, arising, in the case of two of them, from the fact that their attorney searched the records, ascertained the recorded liens, and was told by the secretary of the corporation that there were no others. If that statement had been made to him by either Ehrehart, Winebrenner, the trustee, or the banks, the question would be entirely different. Just grounds for estoppel would have arisen, because it was Ehrehart's debt that was secured collaterally by the bonds, the bank held the bonds, and Winebrenner was its treasurer, trustee, and representative. But Moore had no interest, and therefore no power to estop those who had. It would be a very dangerous doctrine to establish that an individual or corporation, by its representative, could, after creating a debt of this kind, estop its recovery by denying that it existed. A calm and dispassionate view does not carry strong conviction of the great wrong done simple contract creditors, so earnestly felt to exist in the minds of counsel; for it is to be borne in mind that their extending credit was a voluntary act on their part, that they could have demanded a lien upon the property before doing so, which would have been entirely good as against the banks' unrecorded one, and the risk they ran by not doing so was of their own creation.

I can see no error in the ruling of the referee in this matter, and it must be affirmed.