## DAVIS et al. v. HANOVER SAVINGS FUND SOCIETY et al.

(Circuit Court of Appeals, Fourth Circuit. November 4, 1913.)

### No. 1162.

**1. CORPORATIONS (§ 474*)—RIGHTS OF BONDHOLDERS.**

Bankrupt corporation issued negotiable bonds secured by mortgage on its property, and delivered the same to its treasurer, who also owned the most of its stock, to be used by him as he deemed best to reimburse himself for advances made by him to the company. The greater part of the money advanced was furnished by claimant banks, and the treasurer gave his personal notes therefor, secured by a pledge of bonds as collateral. That bankrupt was indebted for the advances in a sum exceeding the amount of the bonds, and that the treasurer was then its only creditor, was clearly established. *Held*, that claimants were bona fide holders of the bonds for value, and were not affected by any equities which may have existed in favor of bankrupt against the treasurer growing out of other matters.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1854; Dec. Dig. § 474.*]

**2. BANKRUPTCY (§ 184*)—LIENS—EFFECT OF STATE RECORDING STATUTE.**

Code W. Va. 1906, § 3103 (chapter 74, § 5), which provides that a mortgage or deed of trust "shall be void as to creditors * * * until and except from the time that it is duly admitted to record," as construed by the highest court of the state, does not make an unrecorded mortgage void as to general creditors but only as to such as have secured liens, and a trust deed executed by a bankrupt corporation, if otherwise valid, is not rendered invalid as against the trustee by the fact that it was not recorded until within four months prior to the bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 275–277; Dec. Dig. § 184.*]

**3. BANKRUPTCY (§ 177*)—PREFERENCES—MORTGAGE RECORDED WITHIN FOUR-MONTH PERIOD.**

A transfer made by a bankrupt is to be judged, in determining the question whether or not it constitutes a preference under Bankr. Act July 1, 1898, c. 541, § 60a, 30 Stat. 562 (U. S. Comp. St. 1901, p. 3445), as amended by Act Feb. 5, 1903, c. 487, § 13, 32 Stat. 799 (U. S. Comp. St. Supp. 1911, p. 1506), as of the time when it was made and not of the time of its registration.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 261–263; Dec. Dig. § 177.*]

**4. CORPORATIONS (§ 477*) — MORTGAGES — EFFECT OF DELAY IN RECORDING — FRAUD.**

The mere failure to record a mortgage is not a fraud upon creditors as matter of law, and that the trustee in a corporation mortgage securing bonds neglected to see that it was promptly recorded cannot estop bona fide holders of the bonds from asserting the lien after it is recorded.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1857–1863, 1865–1869; Dec. Dig. § 477.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**5. CORPORATIONS (§ 473*)—BONDS—LIENS—UNRECORDED MORTGAGE—DECLARATIONS OF BANKRUPT.**

 The declaration of an officer of a bankrupt corporation that its property was unincumbered, when in fact it had an outstanding issue of bonds secured by an unrecorded mortgage, cannot affect the rights of the bondholders.

 [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1842–1853, 1855; Dec. Dig. § 473.*]

Appeal from the District Court of the United States for the Northern District of West Virginia, at Martinsburg, in Bankruptcy; Alston G. Dayton, Judge.

In the matter of Charles Town Light & Power Company, bankrupt. From an order allowing the claims of the Hanover Savings Fund Society, the People's Bank of Hanover, and John R. Bittinger, bondholders, against the proceeds of the mortgaged property, Amelia Davis, trustee, and others, appeal. Affirmed.

Geo. M. Beltzhoover, Jr., of Shepherdstown, W. Va., and A. Moore, Jr., of Berryville, Va., for appellants.

Forrest W. Brown, of Charlestown, W. Va., and Charles Markell, of Baltimore, Md., for appellees.

Before PRITCHARD, Circuit Judge, and KELLER and CONNOR, District Judges.

CONNOR, District Judge. [1] The procedure in this case conforms with that approved in Coder v. Arts, 213 U. S. 223, 29 Sup. Ct. 436, 53 L. Ed. 772, 16 Ann. Cas. 1008. Appellees, Hanover Saving Fund Society, People's Bank of Hanover, and John R. Bittinger, at the first meeting of the creditors of the Charles Town Light & Power Company, in bankruptcy, filed proof of their claims, consisting of 18 coupon bonds, executed by the bankrupt company, with coupons attached, bearing date November 18, 1904. They alleged that the payment of said bonds was secured by a mortgage or deed in trust to Paul Winebrenner, constituting a first lien on the property of the bankrupt, and asked that an order be made directing the payment of said bonds from the proceeds of the sale thereof. To this claim the trustee, and certain creditors, filed objections; for that:

"(1) The banks have no provable claim against the bankrupt because: (a) The bankrupt was not, on November 18, 1904, indebted to Ehrehart, from whom they received the bonds. (b) Ehrehart had no authority to pledge the bonds as collateral for his personal indebtedness.

"(2) If the banks have provable claims, they are not entitled to priority over the unsecured creditors because: (a) The mortgage, securing the bonds, constitutes a voidable preference; and (b) the mortgage was fraudulently withheld from record, and is therefore void as security.

"(3) That by their negligence and laches the banks have estopped themselves from asserting their claims, or, if allowed to assert them, they should be postponed in payment of the debts, to all other creditors." In re Charles Town L. & P. Co. (D. C.) 199 Fed. 846.

The referee heard the evidence and argument of counsel for the respective parties, overruled the objections, and upon petition for review certified the record, together with his conclusions, to the judge of

the district. He accompanied his certificate with an opinion setting forth his conclusions both of law and fact. The judge sustained his conclusions in both respects and the trustee appealed to this court. We concur in the opinion of Judge Dayton that:

"By the very complete and able opinion filed by the referee, it is clearly shown that the evidence, upon which he bases his finding, was very carefully considered by him."

We also concur with the judge, in affirming the finding of the referee, that the bankrupt was indebted to Ehrehart on November 18, 1904, for sums of money which he had advanced to it. The bankrupt corporation was organized during the year 1901—the capital stock was subscribed by Charles E. Ehrehart, who transferred a small number of shares to his associates. In payment for the stock, he conveyed to the company the plant, etc., for which it issued to him stock for $19,000 and the obligation of the company for $16,000. The property may have been taken at an excessive valuation—probably it was—that contention is irrelevant to any question raised, or which could be raised, upon this record. The company was chartered and organized pursuant to the statutes of West Virginia. If the corporation has any cause of action against Ehrehart for unpaid stock, it must be prosecuted in an action appropriate for that purpose; the question cannot be litigated here. After the company was incorporated and became a "going concern," Ehrehart, as its largest stockholder and substantial owner, made advancements to it, largely through the claimant banks. On November 18, 1904, a large amount was due Ehrehart from the company, the larger part of which he owed the banks, on account of these advancements. The findings of fact, in both respects, is supported by the evidence, in respect to which there does not appear to be any contradiction. On November 18, 1904, the board of directors of the company adopted a resolution authorizing and directing the issue of 18 coupon bonds of $1,000 each, running 20 years and, for the purpose of securing the payment of the interest semiannually, and the principal of said bonds when matured, the president and secretary were authorized to execute a mortgage, or deed in trust, to Paul Winebrenner, trustee, conveying all of the property then owned, or which should thereafter be acquired, by said company. At a meeting of the stockholders, held on the said 18th day of November, 1904, at which the holders of all of the capital stock of said company were present, either in person or by proxy, the resolution of the board of directors was submitted, together with the form of the mortgage, and the same was "ratified, confirmed, and approved." The foregoing appears on the records of the company.

The referee found, as a fact, and his finding was approved by the judge, from oral evidence that, at the same meeting a resolution was adopted, authorizing Ehrehart, who was treasurer of the company, to negotiate, or use, the bonds as he deemed best to reimburse himself for the money he had expended for the company. At this time the amount due Ehrehart from the company was about $20,000. While, as said by the referee, the records of the company were loosely kept, he finds the foregoing facts from the evidence before him. The bonds and

mortgage were executed, in proper form, by the president and secretary. The mortgage was duly probated and delivered to the trustee, who duly certified the bonds. He handed the mortgage to Ehrehart, with the direction that he cause it to be recorded in the proper office in the county wherein the property was situate. The trustee resided in the borough of Hanover, York county, Pa. Ehrehart neglected to have the mortgage recorded until November 6, 1909. Neither the trustee nor the banks had knowledge or information of his failure to have the mortgage recorded until a few days prior to the date of its registration, when they directed that it be recorded at once. On November 18, 1904, Ehrehart—

"was the practical owner of the plant, and its only creditor. He and his associate stockholders, in the course of the operation of the plant, at various times prior to November 18, 1904, had borrowed sums of money upon their individual credit from the Hanover Saving Fund and the People's Bank of Hanover, aggregating $12,816.79, which had been furnished to, and expended by, the bankrupt, in such operations and improvements. Between November 18, 1904, and March 30, 1905, additional loans were made by these two banks to Ehrehart and by him used for the same purposes, of some $3,363.69—making a sum total of $16,450.48 so loaned by them."

Ehrehart took up the individual obligations of himself and associates, and gave to the banks his individual note and, as collateral security therefor, deposited with said banks 16 of said bonds, according to the amounts due each bank. The remaining two bonds were sold to J. R. Bittinger. Subsequent to these transactions, and prior to the registration of the mortgage, the company became indebted to other creditors, all of whom have proven their debts. The company was adjudged an involuntary bankrupt on March 13, 1911, upon petition filed March 3, 1910. 183 Fed. 160; 184 Fed. 986, 106 C. C. A. 488.

The foregoing is relevant to the questions of law presented upon the appeal. The validity of the bonds, as outstanding obligations against the estate of the bankrupt, and the indebtedness for which they were deposited as collateral security, being established, it would seem to follow, without serious controversy, that the banks are holders for value. It appears that Ehrehart has, since the transactions between the banks and himself, been adjudged bankrupt. The infirmity in the bonds, suggested by the trustee and objecting creditors, is that, by reason of matters connected with the organization of the bankrupt, the corporation had claims or causes of action against Ehrehart. There is no suggestion that the banks had any notice of these matters, and, if they had, we do not perceive how they could be considered or disposed of in this proceeding. The bonds were duly executed and, as found by the court, placed in the hands of the treasurer for the specific purpose to which they were applied. It is inconceivable that either Ehrehart or the other stockholders intended, by anything done in connection with the issue or disposition of the bonds, to defraud the corporation, for the conclusive reason that the property, for all practical purposes, belonged to Ehrehart, and he was its only creditor. The bonds were negotiable, and upon the facts found the banks took them for value. Railroad v. Natl. Bank, 102 U. S. 14, 26 L. Ed. 61.

We are thus brought to the question regarding the validity of the

lien claimed by the banks. The answer to this question is dependent upon the validity of the mortgage to Winebrenner, trustee. The debts, of the objecting creditors, were contracted subsquent to the execution of the bonds and mortgage and to the transfer to the banks, but prior to the registration of the mortgage, November 6. 1909.

[2] Eliminating, at this point, the suggestion that the failure to record the mortgage was a fraud on creditors whose debts were contracted subsequent to its execution, or that such failure works an estoppel on the banks to assert the lien, the question is presented whether, at the date upon which the company was adjudged bankrupt, or the petition was filed, the mortgage was a valid lien under the statutes of the state of West Virginia. Section 67a of the Bankrupt Act provides that:

"Claims which for want of record or for other reasons would not have been valid liens as against the claims of the creditors of the bankrupt shall not be liens against his estate."

The validity of the mortgage, therefore, must be ascertained by an examination of the statute and decisions of the Supreme Court of West Virginia. Holt v. Crucible Steel Company, 224 U. S. 262, 32 Sup. Ct. 414, 56 L. Ed. 756. The West Virginia statute (section 3103), provides that a deed of trust—

"shall be void as to creditors * * * until and except from the time that it is duly admitted to record."

As said by Mr. Justice Van Devanter in Holt v. Crucible Steel Co., supra: "The effect to be given to the unrecorded chattel mortgage must be determined by the recording law of the state; and it is also apparent that the question arising under that law, turns upon who are included in the term 'creditors' in the state statute." In Gilbert v. Peppers, 65 W. Va. 355, page 364, 64 S. E. 361, page 365 (36 L. R. A. [N. S.] 1181), referring to the registration act of the state, it is said that the statute does not contemplate general creditors.

"As to them it is valid, whether recorded or not. A mere personal debt bears no relation to the property of the debtor, since it does not constitute a lien thereon. Before a creditor can claim any legal right in respect to the property of his debtor, or any interest therein, in law or equity, he must, by some means, acquire a lien thereon, as by an attachment or reduction of his debt to judgment."

The mortgage was duly admitted to record on November 6, 1909— this completed the title of the trustee, as to all persons except purchasers and creditors—that is, creditors who had theretofore acquired a lien on the property. Less than four months elapsed from the filing of the petition and the registration of the mortgage. For the purpose of adjudication, the registration of the mortgage within four months before the filing of the petition was an act of bankruptcy—that is, a preference as of that date. Section 60b. The title of the trustee vests as of the date of the adjudication (section 70), with the right, however, to institute any suit for the purpose of avoiding any transfer by the bankrupt which any creditor of such bankrupt might have avoided. He takes title, however, subject to all valid liens, claims, and equities, or, as is frequently said, "stands in the shoes of the bank-

rupt." At the date of the filing of the petition and of the adjudication of the company, Winebrenner, trustee, held a mortgage, or deed in trust, duly recorded, and valid as against the creditors of the bankrupt, and therefore as against the trustee in bankruptcy. In Holt v. Crucible Steel Co., supra, the claimant asserted a lien against the property, by virtue of an unrecorded mortgage. The creditors had not secured liens. The court held, affirming the judgment of the Circuit Court of Appeals, which followed the decision of the Supreme Court of Kentucky, the state in which the property was situate, that the unrecorded mortgage constituted a valid lien as against creditors who had not acquired a lien. The opinion of Judge Severens, 174 Fed. 127, 98 C. C. A. 101, makes the matter very clear. In re Doran, 154 Fed. 467, 83 · C. C. A. 265, the mortgage was filed for registration prior to the filing of the petition in bankruptcy, although "held from record for several months, during which time a large part of the indebtedness [of the bankrupt] was incurred." It was held to be a valid lien. In re Rutland-Perry Co. (D. C.) 205 Fed. 200. Appellants rely upon Moore v. Tearney, 62 W. Va. 72, 57 S. E. 263. An examination of the opinion in that case discovers that the conveyance by the debtor was attacked for fraud, that is, that it was made with intent to defraud creditors. There was evidence tending to show that it was withheld from registration by concert between the parties—to the deed. In such cases, withholding the deed from registration is always regarded as a circumstance tending to show that it was executed with a fraudulent intent. The court is, however, careful to say that:

"It has always been held in this state that the creditors mentioned in said section 3103 only included such creditors as had a lien or hold upon the land so conveyed and not general creditors."

[3] The case is cited in Gilbert v. Peppers, supra, and, in no sense, conflicts therewith. Unless, therefore, for some other reason, the banks are precluded or estopped from asserting the lien of the mortgage, the ruling of the court below is manifestly correct. It is claimed, however, that the execution of the mortgage was a voidable preference. It was not a preference at the time of its execution, because the bankrupt owed no debts other than those to Ehrehart, and it was to provide for their payment that the bonds were issued. In Debus v. Yates (D. C.) 193 Fed. 429, Judge Cochran, in a very elaborate and well-considered opinion, held that, since Amendment of 1903, § 60a:

"The transfer was to be judged, in determining the question whether or not it constituted a voidable preference, as of the time when it was made and not at the time of its registration, and that, unless when it was made the debtor was insolvent and actually intended a preference, and the creditor then had reasonable cause to believe it was so intended, it is not voidable."

Adopting this decision as a correct construction of the section 60a, as amended by the act of February 5, 1903, there is no basis for the suggestion that the mortgage was a voidable preference. The amendment of 1910 makes a radical change in the law in this respect. The mortgage in controversy here, however, was recorded on November 6, 1909, and does not come within the provisions of that amendment. There is a saving clause in the act of 1910, preventing its application

to cases pending when it went into effect, June 25, 1910. Collier on Bankruptcy (9th Ed.) 1359. The petition was filed here March 3, 1910. The reasoning and citation of authorities in Debus v. Yates, supra, impresses us as they did the learned judge below. While not strictly analogous, it is in line with the decisions in Re Sturtevant, 188 Fed. 196, 110 C. C. A. 68, and Re Klein, 197 Fed. 241, 116 C. C. A. 603, in which it is cited with approval. We do not think, tested by either standard, the execution of the mortgage was a voidable preference.

[4] It is insisted, however, that if for neither of these reasons the claim should be rejected as a lien, it should be declared invalid because either made or withheld from registration with intent to defraud creditors, in violation of the statute of West Virginia. This contention may be made by the trustee, under the provisions of section 70e of the Bankrupt Act, and for that purpose he is given the rights of a lien creditor. We concur with the referee that this—

"proceeding is not an attack on the deed, but as to its relevancy and sufficiency as proof to sustain the status of the claimant's debt as a priority."

[5] For manifest reasons the questions which would be raised, and of necessity be decided, in such an action should not be tried in this proceeding. The question of the intent with which the deed was made, or withheld from record, would be a proper issue for trial by a jury. Merely failing to record a mortgage is not a fraud upon creditors, as matter of law. Bean v. Orr, 182 Fed. 599, 105 C. C. A. 137. The evidence fails to show any agreement between the trustee, the banks, and the bankrupt, or Ehrehart, to withhold it from registration. The failure on the part of the trustee to record the mortgage cannot operate to estop the banks, holding the bonds, from asserting the lien after it is recorded, nor does the declaration of an officer of the bankrupt that there is no incumbrance on the property, affect the rights of the holders of the bonds. There is no suggestion that the banks had any notice, or knowledge, of such declaration. As is well said by the learned judge below:

"It would be a very dangerous doctrine to establish that an individual or corporation, by its representative could, after creating a debt of this kind, estop its recovery by denying its existence."

We have given to the record, and the very full briefs of counsel, a careful consideration. Although, by reason of the failure or neglect of Ehrehart to record the mortgage before other debts were contracted, a hardship is wrought, it is one of the incidents of business and commercial life, which cannot be dealt with in this proceeding. The objections and the evidence relied upon to sustain them have been carefully considered by the referee and the learned judge below; we concur in their conclusions.

Affirmed.